UNITED STATES, Appellee

v.

WILMER KEITH, Corporal U. S. Army, Appellant

1 USCMA 493, 4 CMR 85

LT. COL. George M. Thorpe, USA, and 1ST LT. Floyd V. Hull, Jr., USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Kenneth A. Howard, USA for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was convicted by general court-martial on June 16, 1951, of larceny and housebreaking in violation of Article of War 93, 10 USC § 1565. The sentence, as approved by the convening authority, extends to a bad-conduct discharge, partial forfeiture of pay for 24 months, and confinement at hard labor for 24 months. The findings and sentence were approved by an Army board of review, one member dissenting. We granted the accused's petition, limited to the issue of whether prejudicial error was committed by the action of the law officer in holding a closed session with the members of the court outside the presence of defense counsel or the accused.

The record discloses that after the court closed to deliberate on the findings but prior to the announcement of the findings, the law officer and the reporter at the request of the president of the court held a conference in closed session with the court at which conference the accused, defense counsel and trial counsel were excluded. The proceedings had at this conference are set forth verbatim in the record of trial. It appears from the transcript that the court had reached a finding on the specification in question, but desired advice on the wording to be used in the finding concerning larceny where there was some doubt as to whether the exact amount of money alleged in the specification as taken had actually been proven. The law officer advised the court that, by exceptions and substitutions, the court could change the amount of money alleged as taken in the specification. The conference was thereupon closed.

Paragraph 74f of the Manual for Courts-Martial, United States, 1951, provides that "After a general court-martial has finally voted on the findings, it may request the law officer and the reporter to appear before it to put the findings in proper form, and such proceedings shall be made a part of the record." This provision is drawn from similar language appearing in Article 39 of the Code, 50 USC § 614. The record in this case makes it clear that the court had finally voted on the findings; that the law officer advised the court only on a matter of form in relation to the findings; and that the proceedings were recorded in their entirety. This consultation, therefore, was not in violation of either the Code or the Manual.

After the findings had been announced and evidence in mitigation and extenuation received, the court closed to deliberate on the sentence. Shortly, thereafter, the court opened and the president stated that the court desired some advice from the law officer. The law officer thereupon excused from the court room the trial counsel, defense counsel, and the accused, and proceeded to answer questions by members of the court concerning the difference between a bad-conduct discharge and a dishonorable discharge insofar as the possibilities of suspension and rehabilitation were concerned. The court also questioned the law officer concerning the conflict between applicability of the 1949 and 1951 Manuals in determining

the maximum sentence. This conference is reported verbatim in the record.

Articles 39 and 26b of the Uniform Code of Military Justice, 50 USC §§ 614, 590, provide as follows:

"Whenever a general or special court-martial is to deliberate or vote, only the members of the court shall be present. After a general court-martial has finally voted on the findings, the court may request the law officer and the reporter to appear before the court to put the findings in proper form, and such proceedings shall be on the record. All other proceedings, including any other consultation of the court with counsel or the law officer shall be made a part of the record and be in the presence of the accused, the defense counsel, the trial counsel, and in general court-martial cases, the law officer."

"The law officer shall not consult with the members of the court, other than on the form of the findings as provided in Article 39, except in the presence of the accused, trial counsel, and defense counsel, nor shall he vote with the members of the court."

In this situation, the law officer conferred with the members of the court outside the presence of the trial counsel, defense counsel, and the accused on matters pertaining to the sentence. This was a clear violation of both Articles 26b and 39, supra. Indeed, the Government concedes that this constituted error. The problem remains of applying the harmless error limitation of Article 59a of the Code, 50 USC § 646.

We turn first to a consideration of the reasons underlying the two articles of the Code quoted above. It will be recalled that, under the Articles of War, the law member acted as the legal advisor to the court, but also participated fully in the court-martial proceedings as a member of the court. He joined in the deliberations on the findings and the sentence, and it was supposed that, during those deliberations, he would give to the court the benefit of his own legal knowledge concerning the problems under consideration. In the early drafts of the statutory changes which

became the Uniform Code of Military Justice, it was proposed to change this concept. The drafters thought it advisable to remove the law member from participation with the court in deliberations on findings and sentence and realign his duties and responsibilities to make them more nearly commensurate with those of the civilian judge. This became the subject of considerable conflict in the committee hearings and floor arguments on the Uniform Code of Military Justice. Critics of the law officer proposal were extremely desirous of retaining the participating law member concept. Opponents of the old system were equally adamant in upholding the desirability of setting up the law officer as a judge-like official. The result is, of course, obvious. Congress determined that the law officer should be established as a judge, that his legal advice on findings and sentence should be provided through legal instructions given in open court, and that he could in no way participate in the deliberations of the court on the findings and sentence. Articles 26b and 39, supra, indicate the extent to which Congress carried its resolve to bar the law officer from acting like his predecessor, the law member. See Hearings No. 37 before House Committee on Armed Services on HR 2498, 81st Cong, 1st Sess, pp 607, 671, 754, 772, 820, 824, 1152; House of Representatives Report No. 491 on HR 4080, 81st Cong, 1st Sess, pp 6, 18; Hearings before Senate Committee on Armed Services on S 857 and HR 4080, 81st Cong, 1st Sess, pp 40, 57, 108, 125, 129, 184, 288, 308; Senate Report No. 486 on HR 4080, 81st Cong, 1st Sess, pp 6, 15, 18, 20, 22.

We considered a somewhat similar problem in United States v. Berry (No. 69), 1 USCMA 235, 2 CMR 141, decided March 18, 1952. That case involved a usurpation by the president of a general court-martial of the functions of the law member. We held that the importance attaching to the full and proper performance of his duties by the law member—and also, we there made clear, by a law officer—required that a failure to perform those duties and responsibilities in accordance with the law would cause invoca-

tion of the doctrine of general prejudice. It is all the more important that, after Congress emphasized in the Uniform Code of Military Justice its desire to insure against any reversion by the law officer to the participation in the deliberations of the court permitted the law member, we should rigidly enforce the Congressional policy as stated in Articles 26b and 39, supra. No one who has read the ▉ legislative history of the Code can doubt the strength of the Congressional resolve to break away completely from the old procedure and insure, as far as legislatively possible, that the law officer perform in the image of a civilian judge. This policy is so clear and so fundamental to the proper functioning of the procedural reforms brought about by the Uniform Code of Military Justice that it must be strictly enforced. In the words of United States v. Berry, supra, this record ". . . discloses an inherently and generally prejudicial disregard for an important segment of the procedures deemed necessary by Congress in the establishment of a scheme of military law administration more nearly in accord with the American system of criminal justice. To condone the practice reflected in this record would be to invite subversion of what we cannot escape regarding as an overriding policy of vital import— a 'critical and basic norm operative in the area' of military justice."

In the interests of full consideration of the issue, we note that we have given careful thought to the civilian precedents cited by the Government. It is clear that the rule in civilian as in military courts is that private communications between the judge and jury without the presence of the accused and his counsel are improper and constitute error. The Government points out, however, that such communications will not be cause for reversal in the civilian courts where the substance of the communication did not prejudice the substantial rights of the accused. We have no quarrel with this general proposition, although we do note that the communications involved must be quite sterile before a finding of no prejudice will be made. There is considerable merit to the defense contention that the consultation in this case may well have directly influenced the court in its decision as to the sentence. However, since we have based our resolution of the limitation imposed by Article 59a, supra, upon the concept of general prejudice, it is unnecessary to assess in detail the possibility or probability of specific and individual prejudice in this case. We do say in relation to the civilian cases relied on by the Government that those cases did not arise at a time or in a system wherein the legislature had recently made an effort to implement basic policies by completely overhauling court procedures and official functions. There is, in the civilian courts, a tradition of centuries standing that judges do not confer privately with juries. In military law, as recently as one year ago, the officers who now serve as law officers were not only allowed but required as law members to confer privately with the court. Once the tradition of non-participation is well-established in the service, it may be possible to assess the occasional lapses in terms of specific prejudice. Until such time as the present system is firmly settled, we shall not pause to inquire into the specific nature of law officer-court consultations where that consultation is patently illegal.

The decision of the board of review is reversed and a rehearing is ordered.

Judge BROSMAN concurs.

Under a recently enacted rule of this Court a judge who is not present at oral arguments of the case is not permitted to participate in the decision. Judge Latimer was in the hospital at the time of argument and his views are therefore not expressed.