UNITED STATES, Appellee

v

JAMES R. HARRIS, JR., Private,
U. S. Army, Appellant

21 USCMA 123, 44 CMR 177

No. 24,083

December 17, 1971

*Captain Richard A. Cooper* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr.*, and *Captain Norman L. Blumenfeld*.

*Captain Steven Mallis* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson*, and *Captain Leon J. Schachter*.

## Opinion of the Court

QUINN, Judge:

Sometime after completion of the staff judge advocate's post-trial advice, someone tampered with the authenticated transcript of the trial. The record does not indicate, and we have not been informed, that any effort has been made by the Government to determine who falsified the transcript. If the Government has indeed done nothing since it learned of the falsification, its indifference is almost as appalling as the act of corruption itself. The Clerk of the Court will be directed to forward a copy of our opinion to the Secretary of the Army in the hope that appropriate proceedings will be initiated to fix responsibility for the illegal act.

The record was altered to add the words "Your motion is denied" to indicate that the trial judge had specifically ruled on a motion to dismiss the specification and charge for denial of a speedy trial. Appellate defense counsel contend that the acknowledged alteration not only destroys the presumption of verity of the authenticated record (United States v Albright, 9 USCMA 628, 26 CMR 408 (1958)), but is such "an affront to the entire concept of military justice" as to require invalidation of the trial.

An illegal action affecting the trial can pose so great a threat to the integrity of the judicial system or to the values sought to be protected by a procedural requirement as to justify

124

invalidation of the entire proceedings without regard to whether the illegal action prejudiced the accused. Thus, to achieve the congressional purpose for the then new prohibition against closed session discussion of sentence between the trial judge (then the law officer) and the court members, we initially applied the strong medicine of reversal as an automatic consequence of the error. United States v Keith, 1 USCMA 493, 4 CMR 85 (1952). When compliance with the congressional mandate became routine, we examined the error for actual prejudice to the accused. United States v Allums, 5 USCMA 435, 18 CMR 59 (1955). Similar considerations affecting the protection accorded by Article 31, Uniform Code of Military Justice, 10 USC § 831, have resulted in setting aside findings of guilty for the erroneous admission into evidence of a statement obtained in violation of the Article, without nice calculation of the effect of the error on the verdict. United States v Wilson, 2 USCMA 248, 8 CMR 48 (1953); United States v Kaiser, 19 USCMA 104, 41 CMR 104 (1969); cf. Chapman v California, 386 US 18, 17 L Ed 2d 705, 87 S Ct 824 (1967); Whitsell v Perini, 419 F2d 95 (CA 6th Cir) (1969).

In the specific area of the verity of an authenticated transcript of trial, we have, from the beginning, weighed the matter from the standpoint of actual harm to the accused. United States v Nelson, 3 USCMA 482, 13 CMR 38 (1953); United States v Belarge, 19 USCMA 91, 41 CMR 91 (1969). As appellate defense counsel correctly observe, our previous cases dealt with omissions from, not additions to, the transcript. In either event, the transcript does not truly reflect what took place at trial. To recognize a distinction between the two situations would require that we disregard the nature of the addition. All sorts of significant additions can be imagined, and appellate defense counsel present several; but there can also be additions that are manifestly trivial and which have no perceivable adverse effect upon any substantial right of the ac-cused. Suppose the addition was an ostensible reporter's note to the effect that assistant trial counsel returned to the courtroom with a statute book the judge had requested. Suppose the accused had pleaded guilty before the trial judge sitting without court members and, in announcing his findings, the judge had stated, in part, "it is my duty as judge to inform you that, in accordance with your pleas of guilty, this court finds you, of all the specifications and charges: Guilty"; and after authentication of the transcript, someone inserts the word "military" before the word "judge" in the announcement to make it accord with the form of announcement set out in the trial guide of the Manual for Courts-Martial. Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 8b, Guide—Trial Procedure, at page A8–16. Would these unauthorized additions justify reversal of the conviction? As reprehensible as the additions would be, their nature would manifestly not be such as to require invalidation of the trial. We hold, therefore, that the █ unauthorized addition of matter to an authenticated transcript is not reversible error if the matter improperly added is harmless to the accused.

One unauthorized addition to the record suggests that others might be included. Appellate defense counsel refer us to the last line of page 4 of the transcript as having been apparently "added after original preparation of the record." The allegedly added words are: "Accused: Yes, sir." The words constitute the answer to the last question by the judge in a series dealing with the accused's understanding of his right to counsel. The colloquy is set out as Appendix A to this opinion. The words appear in the same type as all the other material on pages 4 and 5, but the ink is slightly darker. If the answer did not appear in the transcript, it would be apparent that something was missing, especially since the judge's next remark is "Alright," which implies satisfaction with an answer. Assuming, therefore, that

the words were not in the transcript as first typed, we think it reasonable to conclude that the omission was discovered by the reporter and inserted in the transcript before it was submitted for authentication.

Appellate defense counsel do not contend that the accused did not reply as the transcript indicates he did. Other circumstances tend to indicate he did make the reply. In an affidavit submitted by appellate defense counsel, the court reporter represents that the "events which occurred in the trial are as set out in the verbatim transcript." The post-trial review comments on the trial judge's failure to rule explicitly on the motion to dismiss, but it notes no other apparent omissions in the transcript. In a certificate accompanying the record, the accused indicated he had discussed the post-trial review with counsel, and he "elect[ed] to submit nothing." In the assignment of error before the Court of Military Review, the accused commented on the conceded improper addition; presumably he had scrutinized the transcript in connection with that assignment, but he did not even suggest there were other unauthorized additions. Finally, it is not claimed that any other part of the transcript is contrary to the accused's recollection of the trial proceedings. Considering these circumstances and weighing the form, the appearance, and the sense of the text of the transcript, we are convinced that, other than the acknowledged addition, no other matter was placed in the transcript subsequent to authentication. Consequently, we accept the record as true and complete in all respects, except for the words, "Your motion is denied."

What harm was done the accused by the unauthorized addition? Appellate defense counsel contend ▬▬▬■ that without the addition it is apparent the trial judge did not rule on the defense motion to dismiss for denial of a speedy trial. Citing the Manual provision that a motion "will be determined at the time it is made unless . . . action . . . [is deferred] until a later time" (Manual, supra, paragraph 67e), they maintain that the judge failed to fulfill his "duty to rule." By implication, they perceive the failure of this duty as a denial of due process.

Pertinent extracts of the discussion on the motion are set out in Appendix B. Government counsel contend, and our own reading of the transcript satisfies us, that the trial judge, defense counsel, and trial counsel proceeded with the trial on the assumption that the accused's preliminary motion to dismiss had been denied. United States v Ficke, 40 CMR 691 (ABR 1969), petition denied, 18 USCMA 642, 40 CMR 327 (1969). We can imagine no way in which the accused could have been hurt by the judge's failure to state the denial in specific words or in a specific form. However, even if we read the record too expansively, all the evidence on the motion was stipulated or undisputed and the issue is one of law. Gale v United States, 17 USCMA 40, 37 CMR 304 (1967). In this situation, the original transcript preserved the accused's right to review the motion, and the motion could properly have been considered on appeal. United States v Tibbs, 15 USCMA 350, 353, 35 CMR 322 (1965); cf. United States v McElwee, 16 USCMA 586, 37 CMR 206 (1967). No prejudice, therefore, resulted from continuation with the course of review after discovery of the unauthorized addition. The speedy trial motion was considered on the merits by the convening authority. He ruled against the accused. The correctness of the ruling was not challenged before the Court of Military Review or in the petition for review by this Court. However, at the Court's request on the argument of the appeal, certain information was filed regarding the reason for the accused's confinement previous to trial for the offense charged. Considering the evidence before the trial judge and appellate defense counsel's interpretation of the material presented to us, we are satisfied that the apparent denial of the motion to dis-

miss at trial and the specific determination of the convening authority on review were not incorrect as a matter of law. We conclude, therefore, that the accused was not harmed by the unauthorized addition to the transcript of the trial.

We also granted review to consider whether the accused was prejudiced by the acting staff judge ▪ advocate's failure to mention in his post-trial advice to the convening authority that the accused's company commander had recommended he not be eliminated from the service. The record contains evidence of substantial mitigation, including the fact that the accused absented himself without authority, the offense charged, to raise money to meet debts arising out of his marriage. The acting staff judge advocate acknowledged that the accused had made "an outstanding impression" upon him, and he indicated he probably would have recommended the accused's retention in the service but for the accused's "negative attitude" toward the Army. It reasonably appears, therefore, that knowledge of the favorable recommendation by the accused's immediate commander might have affected the convening authority's determination of an appropriate sentence. Corrective action is required. United States v Rivera, 20 USCMA 6, 42 CMR 198 (1970); United States v Boatner, 20 USCMA 376, 43 CMR 216 (1971); United States v Eller, 20 USCMA 401, 43 CMR 241 (1971).

The decision of the United States Army Court of Military Review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Army. New post-trial proceedings in regard to the sentence may be ordered.

## APPENDIX A

"MILITARY JUDGE: Private Harris, you have a right to be defended at this trial by a civilian lawyer of your own selection, provided by you, at no expense to the government in addition to the services of your detailed defense counsel. Do you understand that?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: You also have a right to be defended at this trial free of charge by a military lawyer of your own selection if he is reasonably available in addition to the services of the detailed defense cousel. Do you understand this?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: Alright. If you are defended by either a civilian lawyer or a military lawyer of your own choice, Captain Todd will act as associate counsel or he may be excused by you. Do you understand that?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: Do you need any time to think this matter over?

"ACCUSED: No, sir.

"MILITARY JUDGE: Are you ready to tell me who you want to be defended by?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: And by whom do you wish to be defended?

"ACCUSED: Captain Todd, sir.

"MILITARY JUDGE: Have you had sufficient time to counsel with him?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: Talk about the evidence against you and the evidence for you?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: Do you feel that you are ready for trial?

"ACCUSED: Yes, sir.

"MILITARY JUDGE: Are you satisfied with the advise [sic] that Captain Todd has given you?

"ACCUSED: Yes, sir. [Material added.]

"MILITARY JUDGE: Alright. I note that all parties required to be present have been sworn.

## APPENDIX B

"MILITARY JUDGE: Accused and counsel will stand. (Counsel and accused complied.)

"Private James R. Harris, Jr., I now ask you how do you plead? But, before receiving your pleas I advise you that any motions to dismiss or grant other relief should be made at this time. Now, I will hear from your lawyer.

"DEFENSE: The defense moves to dismiss the charge and specification for lack of speedy trial.

"MILITARY JUDGE: Alright. The specification alleges absence termination on 6 January 1970.

"PROSECUTION: That is correct, your honor.

"Mark this Prosecution Exhibit 1 for identification. (Reporter complied.)

"The prosecution offers into evidence Prosecution Exhibit 1 for identification, a stipulation or chronology of events in this case.

. . . . .

"MILITARY JUDGE: . . . Prosecution Exhibit 1 for identification is received as a stipulation of fact.

"PROSECUTION: Mark this Prosecution Exhibit 2 for identification. (Reporter complied.)

"Offer Prosecution Exhibit 2 for identification into evidence as Prosecution Exhibit 2.

"DEFENSE: No objections.

. . . . .

"PROSECUTION: The purpose, your honor, is to show that the confinement that the accused was serving from 9 January 1970 was punishment given at a previous court-martial. You will notice that the form shows him tried and adjudged on 24 July 1969, the day of the alleged AWOL, and that sentence was six months.

"MILITARY JUDGE: So when he came back he was placed . . .

"PROSECUTION: In confinement as a sentenced prisoner.

128

"MILITARY JUDGE: Not as a vacated suspension?

"PROSECUTION: As a sentenced prisoner.

. . . . .

"MILITARY JUDGE: Very well. Prosecution Exhibit 2 for identification is received into evidence as Prosecution Exhibit 2.

"PROSECUTION: That is all the prosecution has, your honor.

. . . . .

"DEFENSE: Well, your honor, the period that the defense is concerned with is a little over 45 days between the time when the accused allegedly returned from AWOL, 6 January 1970, and 24 February 1970, when the charges were preferred and the accused was informed of the charges against him. During this time, as shown on the stipulation of fact here, they received the 201 file and 188's. The defense would just like to point out that the accused's records were at all times at Fort Leonard Wood, Missouri, during this period. In addition, we feel, we contend that the 45 days here is very important in the proceedings because informing the accused of the charges against him is the first step to be taken in a court-martial proceedings and we contend that this, in this case, is a flagrant violation of Article 10, UCMJ, which says that the accused must be informed of the charges against him and immediate steps must be taken to do so. We contend that this is far from immediate and we submit that this is somewhat more like a flagrant delay. They denied him the very first step necessary which is in violation of the Code.

"MILITARY JUDGE: Do you wish to argue this?

"PROSECUTION: Just to point out a couple of things, your honor. First of all, we feel that there is a lack of prejudice to the accused here since his confinement was not pretrial confinement but was confinement pursuant to a punishment by a court-martial. Just to keep the record clear, it is stipulated between the defense

counsel and myself that the records of this accused were at Fort Leonard Wood, the defense is correct in that. We would assure your honor that the government has shown diligence if not efficiency in the prosecution of the case. We believe that that is all that is required.

. . . . .

"MILITARY JUDGE: . . . Here, your man was returned from an absence without leave and all agree that he returned on 6 January and unless he was unconscious on 24 July 1969 he knew that he had had a court-martial.

"DEFENSE: Yes, sir.

"MILITARY JUDGE: And, also, that he was sentenced to a period of confinement. The court will take evidence to the contrary.

"DEFENSE: I have no evidence to the contrary, but, I would like to point out that prejudice is not a requirement in making a speedy trial motion.

"MILITARY JUDGE: I'm not requiring it, but, on the other hand, as far as the government is concerned, we have found the law just as apprehensive salting the man away serving another sentence while we fool around waiting to gather up evidence. I'm not inferring it in this case, I don't see any evidence of that.

"Do you have other motions? Your motion is denied. [Material added.]

"DEFENSE: No, your honor. None at this time.

"MILITARY JUDGE: May I have a plea then.

"DEFENSE: The accused pleads: To the specification and the Charge: Not Guilty.

"MILITARY JUDGE: Alright. Do you wish to make an opening statement?

"PROSECUTION: No opening statement, your honor."

DARDEN, Chief Judge (concurring in part and dissenting in part):

I would affirm the decision of the Court of Military Review for the rea-sons expressed in my dissents in United States v Rivera, 20 USCMA 6, 42 CMR 198 (1970), and United States v Boatner, 20 USCMA 376, 43 CMR 216 (1971).

FERGUSON, Senior Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree only with that part of the principal opinion which holds a new post-trial proceeding in regard to sentence is required because of the failure of the staff judge advocate to advise the convening authority that the accused's company commander had recommended that he not be eliminated from the service. United States v Rivera, 20 USCMA 6, 42 CMR 198 (1970); United States v Boatner, 20 USCMA 376, 43 CMR 216 (1971); United States v Eller, 20 USCMA 401, 43 CMR 241 (1971). I disagree, however, with my brothers' holding with regard to the unauthorized addition to the transcript of the trial.

In the first place, the unauthorized addition to the record of trial of the words "Your motion is denied," after the authentication of the transcript and subsequent to approval by the officer exercising general court-martial authority, is a violation of Article 134, Uniform Code of Military Justice, 10 USC § 934—willfully and unlawfully altering a public record. This offense, far from being minor in nature, is punishable by a dishonorable discharge, confinement at hard labor for three years, and accessory penalties. Secondarily, this unauthorized addition to the record can hardly be classified as trivial for it incorrectly records that the military judge denied a defense motion to dismiss for lack of speedy trial. The motion was properly addressed to him. Article 51(b), Code, supra. Paragraph 67e, Manual for Courts-Martial, United States, 1969 (Revised edition), requires that the military judge rule on the motion at the time it is presented or, if deferred, before the court closes to deliberate on the accused's guilt or innocence. My brothers concede that in this case he failed to rule on the mo-

tion at any time. The military judge's failure to do so effectively precluded counsel from requesting that he place upon the record, for the purpose of appellate review, his reasons for denying the motion.

The third basis for my disagreement is that the record of trial, as now presented, is irregular and is not an accurate or verbatim record of what occurred at the trial. Article 54, Code, supra, 10 USC § 854, provides that a punitive discharge may not be adjudged unless a verbatim record of the proceedings and testimony has been made. See paragraph 83a, Manual, supra; United States v Whitman, 3 USCMA 179, 11 CMR 179 (1953); United States v Belarge, 19 USCMA 91, 41 CMR 91 (1969). An unauthorized addition to the record affects the completeness thereof in the same manner as does a failure to record a part of the proceedings.

My brothers, while strongly condemning what occurred here, calling the alteration of the record an "act of corruption" and denominating it as an "illegal act," nevertheless, hold that the accused was not harmed thereby. I do not believe that is the test which should be applied in the face of such contemptuous and criminal activity.

There are some matters which are so shocking to the judicial conscience that a test for prejudice would be meaningless. This tampering with the record of trial, *while that record was still in the hands of the Government,* constitutes a flagrant disregard for the absolute verity of the official record (United States v Albright, 9 USCMA 628, 26 CMR 408 (1958)), and an affront to the entire concept of military justice, which should not be countenanced by this Court. Cf. United States v Tucker, 9 USCMA 587, 26 CMR 367 (1958). The potential for injury to the appellate processes of military justice is so great that this Court should take such extraordinary action as is necessary to make it perfectly clear that wrongful charges in the record of trial will not be tolerated. Indeed, this is, in my opinion, the obligation of this Court "to which Congress has confided primary responsibility for the supervision of military justice in this country and abroad." Noyd v Bond, 395 US 683, 695, 23 L Ed 2d 631, 89 S Ct 1876 (1969).

In sum, then, what is before us in this case is admittedly not an authentic record of trial, but one on which the Government's agents have practiced forgery. To countenance such a practice on behalf of the United States by applying doctrines of prejudice is merely to encourage their devious behaviour. If we cannot be sure the records before us are authentic, our review is meaningless, for curing error below will simply depend on the availability to some judge advocate of a matching typewriter. Such behaviour cannot be condoned, and the cure to be applied is instant reversal and dismissal of the charges.

I would reverse the decision of the Court of Military Review and order the charge and its specification dismissed.