UNITED STATES, Appellee

v.

ALFRED G. KUPFER, First Lieutenant, U. S. Army, Appellant

3 USCMA 478, 13 CMR 34

No. 2733

Decided December 11, 1953

LT COL James C. Hamilton, U. S. Army, and 1ST LT Jack W. Tucker, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused officer was convicted by general court-martial, convened at an overseas station, under charges of unlawful sale of whiskey to enlisted men, in violation of Articles 133 and 134, Uniform Code of Military Justice, 50 USC §§ 727 and 728. The convening authority approved only so much of the sentence as provides for dismissal from the service, and the findings and sentence have been affirmed by an Army board of review. The case is before this Court on petition by the accused—with the grant of review limited to consideration of the question of whether the record reflects adequately what transpired at a "closed conference" on the findings between the law officer and the court.

For the purpose of considering this issue, it is unnecessary to advert to the evidence adduced at the trial. Following the presentation of evidence, the law officer delivered lengthy and proper instructions to the court, wherein was used the language set out below:

"After finally arriving at your findings, the court should request the law officer to appear before it in closed session to put the findings in proper form before opening to announce them formally. At this time only the president should speak for the court. The only purpose of the law officer appearing in closed session is to put the findings in proper form. The discussion of any matter at this closed session not related to this purpose is unauthorized. In the event the court is in need of further instructions to assist it in arriving at proper findings, it should open the court and so advise the law officer in open court."

At a subsequent point, the record indicates that the following transpired:

**479**

"LO: The court will be closed.
(The court closed at 1550 hours, 26 November 1952.)

"LO: Let the record show that the court has requested the law officer to appear before it in this closed session to put its findings in proper form. The members of the court who were present when the court closed to make its findings, the law officer, and the reporter are the only personnel present.

Let the record show that the court's findings have been submitted to the law officer in writing and will be marked by the reporter as Appellate Exhibit 1. No physical changes will be made in this exhibit either by the law officer or by the court.
(The law officer and the reporter then withdrew from the closed session.)
(The court reopened at 1630 hours, 26 November 1952.)

"PRES: The court will come to order."

## II

Article 39 of the Code, 50 USC § 614, contains the following language:
". . . After a general court-martial has finally voted on the findings, the court may request the law officer and the reporter to appear before the court to put the findings in proper form, *and such proceedings shall be on the record. . . .*" [Emphasis supplied.]

It is a requirement of military law that the record of trial by general court-martial shall reflect both a complete and a verbatim account of that which transpired thereat. Code, supra, Article 54, 50 USC § 629; Manual for Courts-Martial, United States, 1951, paragraph 82b. See United States v. Whitman, 3 USCMA 179, 11 CMR 179. Proceedings during a closed conference called for the purpose of putting the findings in proper form—being a part of the record of trial—must be reported therein both verbatim and completely.

Appellate defense counsel have proceeded on the premise that necessary implications from the face of the record

in this case demand the conclusion that events of significance transpired during the findings conference without their having been the subject of report therein. Consequently—they argue—reversal must follow, for the plain reason that this Court cannot possibly be aware of all that was said and done at the time. United States v. Miller, 2 USCMA 272, 8 CMR 72; United States v. Cadena, 1 USCMA 534, 4 CMR 126. Granting the correctness of this premise, we would have little hesitation in accepting the offered conclusion. However, is there not another interpretation of the record —and one infinitely safer, more reasonable and more plausible—demanding with even greater force the conclusion that no significant omission did occur in the reporting of this portion of the trial? We believe that there is.

Under this interpretation of events, the court-martial closed in conformity to the direction of the law officer, and began its deliberations on the findings. At the termination thereof it set down on the findings worksheet—which is Appellate Exhibit No. 1 herein—its determination of guilt. Thereupon, it was indicated to the law officer and the reporter that they should reenter the court. They followed this direction. The law officer scrutinized the findings in their tentative state, and—since he found no error in the form thereof—returned them to the president after examination. Thereafter, he made the statement which appears fully and explicitly in the record—one in which he directed that certain matters be shown therein. Following this transaction, the law officer and the reporter withdrew, after which the court reopened. Under this construction of the record, the only words spoken by the law officer to members of the court—or to anyone for that matter—were the ones set out in the record. And why should this construction not be accepted? The record reports that they were the only words spoken; this statement is not inherently improbable; and no slightest shred of impeaching evidence has been called to our attention.

## III

In construing particular records for

480

the purpose of determining their verbatim character and completeness, we cannot entirely forsake the world of order and reason. At least a minimum of practical judgment must be used, and this Court is justified in relying, to some extent at least, on its comprehension of official conduct and its knowledge of court-martial procedure and customary usage. Thus a record must be regarded as reflecting a verbatim account, although it does not report the specific words, if any, by which a law officer, standing outside the courtroom, is requested—usually by the court's junior member—to reenter. Indeed, it would be highly unusual to encounter a record containing such language—which may not, in fact, have been aimed directly at the law officer, or even used in the reporter's presence. Yet the phraseology, if any, used for this purpose is a part of the open proceedings of the court-martial.

Similarly as to completeness. In the case before us, for example, the record does not indicate—apart from the remarks of the law officer—that the court's findings were submitted to him in writing. Yet we cannot believe that the reporter was under any sort of obligation to include an independent statement to this effect. Of course it is a part of the latter's obligation to report completely all procedural steps taken, as well as to set down accurately that which was said at the trial by witnesses, the accused and all personnel of the court-martial. However, the presentation by the reporter in the record of trial of the law officer's statement that written findings had been submitted to him—without contrary comment by the former—must constitute, we believe, an implied representation on his part that this action did, in fact, take place. Implicitly, therefore, the record reflects with clarity that the law officer *was* requested by the court to appear before its members, and that certain written findings were submitted to him for approval as to form.

Since there exists a reasonable interpretation of what did occur at the conference, thus called for the purpose

indicated, and one under which every word spoken by the law officer is fully indicated in the record, can it be argued seriously that we are to presume irregularity—to speculate the court, the law officer and the reporter into error? It will be recalled that the members of the court-martial were explicitly informed that "the discussion at this closed conference not related to this purpose [putting the findings in proper form] is unauthorized." To restate the earlier question, therefore, are we to presume that the law officer disregarded his own carefully stated instructions, and that additionally the court or some of its members disobeyed that specific advice? We have indicated in previous decisions our necessary belief—in the absence of countervailing evidence—that the members of a court-martial will follow instructions furnished by the law officer. United States v. O'Briski, 2 USCMA 361, 8 CMR 161. Are we then to suppose—in the absence of evidence to the contrary—that the law officer himself will disregard them? Clearly we must return a negative answer.

It cannot be denied that worksheets of the type forming Appellate Exhibit No. 1 serve a variety of commendable purposes. Initially they furnish to the court the style in which findings are to be announced, and effectively avoid possible errors on its part in seeking to arrive at the correct form. Additionally, they reduce materially the need for discussion—for verbal exchange—between the law officer, on the one hand, and the president and court members, on the other, and thus minimize the possibility that such colloquy will trench upon unauthorized areas. Cf. United States v. Keith, 1 USCMA 493, 4 CMR 85; United States v. McConnell, 1 USCMA 508, 4 CMR 100. However, the utilization of these papers would be of dubious value were we readily to infer from their use that the reporter must necessarily have violated his sworn duty to maintain a verbatim account—this for the reason that, according to the record, there was substantially no conversation between the law officer and court concerning the form of the findings.

**481**

Not only was the reporter under oath, but all other participants in the trial—save witnesses and the accused—were sworn either as members or as officers of the court. The trial counsel, for example, labored under a duty to examine the record carefully for errors or omissions. Manual, supra, paragraph 82e. The law officer and the president were obliged to authenticate the record, and "are responsible for its accuracy." Manual, paragraphs 82a and 82f. Moreover it is contemplated that defense counsel will scrutinize the record, report inaccuracies and oversights, and suggest appropriate changes. Manual, paragraph 82e. All of these persons necessarily had contact with the record at the trial level—yet none appears to have considered a challenge for incompleteness or inaccuracy. No certificate of correction has been secured, nor, so far as we can tell, was one suggested or requested. All personnel connected with the tribunal and the trial were subject to the provisions of the Uniform Code of Military Justice. Consequently, had they failed knowingly to insure the presentation of a complete and accurate record to reviewing authorities, not only would they have disregarded their sworn duty, but as well they would have risked a violation of Article 98 of the Code, 50 USC § 692.

The record's principal—even sole—fault in our view lies in the failure of the reporter to note the exact time at which the law officer reentered the courtroom to assist in the formal preparation of findings. Strictly speaking, this should have been done. However, we cannot believe that this omission may properly be taken to cast suspicion on a proceeding which in every other respect seems to have been conducted carefully and reported well.

For the foregoing reasons we are unable to find here an illegal closed conference within the intendment of prior rulings by this Court. Accordingly, the decision of the board of review must be affirmed.

Chief Judge QUINN and Judge LATIMER concur.