UNITED STATES, Appellee

v.

NORRIS C. NELSON, Master Sergeant, U. S. Army, Appellant

3 USCMA 482, 13 CMR 38

No. 2760

Decided December 11, 1953

LT COL James C. Hamilton, U. S. Army, and 1ST LT Jack W. Tucker, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial and found guilty of two separate offenses proscribed by the Uniform Code of Military Justice: (1) operating a vehicle while drunk, in violation of Article 111, 50 USC § 705, and (2) involuntary manslaughter, in violation of Article 119, 50 USC § 713. He was sentenced to a dishonorable discharge, total forfeitures of pay and allowances, and confinement for three years. Reviewing authorities reduced the confinement to eighteen months but otherwise approved. We granted the accused's petition to determine whether there was an unreasonable multiplication of charges and whether the record on appeal included a verbatim record of the proceedings and testimony before the court-martial.

I

We may dispose of the contention that there was an unreasonable multiplication of charges with little discussion. The specifications under which the accused was tried state:

"In that . . . [the accused], did, at Augsburg, Germany, on or about 2130 hours, 7 September 1952, on Prinzregentin Street, near the Cafe Eickmann, operate a vehicle, to wit: A passenger car, while drunk, in a reckless manner, and did thereby cause said vehicle to strike and injure Willi Bayersdoerfer.

"In that . . . [the accused] did, at Augsburg, Germany, on or about 2130 hours, 7 September 1952, by culpable negligence, Unlawfully kill Willi Bayersdoerfer by running over him with an automobile."

We may assume without deciding, that the specifications allege two offenses arising out of the same transaction which are not separable, but the action of the law officer rendered any issue on multiplicity immaterial. He informed the court-martial that the maximum sentence which could be imposed under the two charges was dishonorable discharge, forfeiture of all pay and allowances and confinement at hard labor for three years. That is the maximum sentence for involuntary manslaughter without consideration of any other offense. Thus, it is readily apparent that the law officer followed the Manual provisions which permit an accused to be found guilty of two offenses arising out of the same transaction, regardless of separability but which limit his sentence by the maximum of the most serious offense. Had the law officer computed the maximum sentence under both charges, the period of confinement would have been four years; and had the court-martial been permitted to consider that period of time, the accused might have just cause to complain. However, the sentence having been limited to the maximum for the one offense, no prejudice has resulted to the accused because he was charged with two offenses. Therefore, the first assignment of error is overruled.

II

A short resume of the evidence is necessary to a proper presentation of

the second assignment of error. The accused was driving a jeep along a street in Augsburg, Germany, at about 9:30 p.m. on September 7, 1952. The street was designed to accommodate two-way traffic, was over twenty feet wide, and brightly illuminated. The victim, who subsequently died from the effects of the injuries, and a friend were pushing an unlighted cart along the right hand side of the street at the time of the incident. The accused, while proceeding at a speed of about twenty miles per hour, struck the cart and the deceased. After the collision, the jeep collided with a nearby tree and came to a stop. Those who observed the accused at the scene of the accident testified to the following: That he had a "glassy" look on his face; that he had "a dizzy look"; that he was "intoxicated"; that he "seemed to be dazed"; that he "was unsteady"; and, that his breath smelled strongly of alcohol. Within a relatively short period of time after the accident, the accused was taken to an Army hospital where he was given a blood alcohol test. The test revealed a blood alcohol level of 2.6 m.g. per c.c. of whole blood. At that level, an average person would be very definitely under the influence of alcohol. While we have summarized the evidence very briefly, there is little necessity to do otherwise as there are few, if any, factual disputes or discrepancies in the record in view of the fact that the witnesses for the Government were in substantial agreement and no evidence was offered for or on behalf of the accused.

The recording of the testimony at the trial was done by means of a wire recording device. The transcript of the testimony was subsequently transcribed from the recording. In preparing the record of trial the stenographer was unable, in some instances, to set out completely and accurately each word uttered by counsel or by witnesses. This necessitated describing a phrase or word as "inaudible." It is contended by the accused that preparation of a transcript in that manner constitutes a failure to comply with the Code and the Manual, and, that he has been deprived of his right to a full appellate review. He also contends that because of the

deficiencies in the record, the portion of the sentence which adjudged a punitive discharge, forfeitures in excess of two-thirds pay, and confinement for more than six months is excessive and, therefore, illegal.

Because the two assertions made by accused, namely, whether he has the advantage of full appellate review and whether there is a sufficiently verbatim record to authorize a punitive discharge, are so closely interwoven, we shall discuss them as one. We believe it will become apparent that if this record of trial is lacking in some material respect, it is not sufficient to authorize the dishonorable discharge; and since the omissions affect the guilt or innocence of the accused, if they are material, they impair his right to a full and fair appeal on the findings.

It is not and could not be contended that the use of a wire recording machine is improper. Indeed, the Manual for Courts-Martial, United States, 1951, paragraph 49b, specifically recognizes the possibility of its use. The framers of the Manual must have known that recording devices have some limitations and that perfect records are seldom acquired. It must be remembered that the difficulties encountered in recording the happenings of a trial are many. At times it becomes virtually impossible to record with clarity every spoken word. It ofttimes happens that several persons talk at the same time. Witnesses are interrupted by counsel and the law officer and the voice of a witness varies in volume. Outside noises interfere and courtroom disturbances garble. These observations are made not for the purpose of justifying poor recording and mediocre transcribing, but to suggest that when Congress used the words "complete record," and the framers of the Manual the phrase "verbatim record," they were cognizant of the ordinary limitations of any reporting system and must have intended to demand only a substantial compliance with the requirement. In this field we get into an expanding and contracting area of substantiality. If only an unimportant word is missing, a transcript would not be inadequate. On the other hand, if any material evidence on a hotly dis-

puted issue of fact is missing, it might result in boards of review and this Court being unable to decide properly the issues raised in the court-martial. We must, therefore, look to this record to determine whether it meets substantially the tests prescribed in the Code and the Manual.

In United States v. Whitman, 3 USCMA 179, 11 CMR 179, we were confronted with a situation where a special court-martial adjudged a bad-conduct discharge on a deficient record. In that case we stated that if a special court-martial is to have power to adjudge a punitive discharge, there must be a verbatim transcript. Such a requirement is set forth in paragraph 83a, Manual for Courts-Martial, United States, 1951. We were there, however, dealing with a record which was of the narrative form and not one in which all of the testimony was recorded and transcribed. The record in the instant case is different as it is verbatim as opposed to narrative. Even though in that case we were dealing with the record of a special court-martial, the same verbatim record must be kept in a general court-martial. Although this is not made explicit by the Code, if a ▆▆▆▆▆▆▆▆ special court-martial cannot impose a bad-conduct discharge in the absence of a verbatim record, it necessarily follows that Congress could not have intended to permit a general court-martial to impose the more severe dishonorable discharge without a verbatim transcription.

Verbatim is defined by Webster as: "Word for word; in the same words." We must accept that definition, but we can apply it ▆▆▆▆▆▆▆▆ sensibly. A strict application would transform a common-sense provision into an impossible requirement. It must be conceded that the transcript in the instant case does not show every word uttered by every witness during the course of the trial. But if we insisted inflexibly on that standard, every record could be assailed as deficient. Many, if not all, records fail to record every word spoken at a hearing. If we were to grant a reversal solely on that basis, we would be stressing minutia over substance and departing

from the obvious intent of Congress as expressed in Article 59(a) of the Code, 50 USC § 646, which states that we should not grant a reversal in a case in the absence of prejudice to the substantial rights of the accused.

It is not reasonably possible to set out the factors which can, in all instances, be used to test whether a record, which has some slight omissions, ▆▆▆▆▆▆▆ prejudiced an accused's right on appeal. Generally speaking, if the record is sufficiently complete to permit reviewing agencies to determine with reasonable certainty the substance and sense of the question, answer, or argument, then prejudice is not present. For instance, if the content of an answer by a witness is clearly discernible from the portions of the testimony transcribed, any appellate court can determine its substance regardless of a word or phrase being omitted. When the omissions are so unimportant that the thought being expressed is readily ascertainable, then the record can be said to be verbatim. Furthermore, the purpose of an appeal is to obtain a decision of the appellate tribunal on error claimed to have been committed in the forums below. If the transcript is sufficiently complete to present all material evidence bearing on all issues, minimal standards have been met and we will not reverse.

Applying the foregoing rule to this case, we reach the conclusion that the record meets those standards. The evidence of intoxication is compelling; and if every question, answer, or statement adverse to the accused which contains any omission was either deleted from the record or interpreted in a light most favorable to him, the weight of the evidence against him would be unchanged. Most of the omissions can be successfully and completely reconstructed from the words which immediately follow or precede them. The context is clear and little ingenuity is required to supply the missing word or phrase. One or two of the omissions appearing in the questions asked by counsel, and a look at their nature, and the recorded portion, makes clear the purpose of the question. Two omissions occurred dur-

ing the argument of trial counsel but the views being expressed by him are certain. At least one omission was occasioned by defense counsel interrupting a witness before completion of his answer but, at best, this merely cut off testimony adverse to the accused. Perhaps the greatest number of omissions are found in several answers of medical witnesses. In practically all instances the questions asked had been answered adverse to the accused but the witness went on to explain the conclusions reached by him. The explanation being offered did not have a tendency to weaken the answer and the omissions could not prejudice the accused. Without dealing with the other omissions separately and specifically, we can gather them together and conclude readily that not one fact of substance or materiality to a legal or factual issue is missing from the transcript. The totality of omissions in this record becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness. For that reason, we conclude the right of appeal guaranteed to the accused has been fully accorded to him. While we believe the stenographer who transcribed these notes could have better performed his task, the record for all practical purposes complies with both the Code and the Manual requirements.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

I agree fully with the majority. This separate opinion is added—perhaps unnecessarily—for the purpose of rendering unmistakable the basis for our assurance that the instant case is distinguishable from United States v. Whitman, cited in the principal opinion. There, certain parts of the record were frankly narrative in form, and no sort of effort was made to set them down verbatim. Here, however, a verbatim record was distinctly attempted throughout the proceedings, and the specific question before us is whether the record was denied this essential quality through lacunae produced by inaudibility. With my brothers, I do not think it was—and for the reasons ably presented by Judge Latimer.

For every reason of function, we must avoid assuming a doctrinaire attitude in determining both what is a complete record and what is a verbatim one. See United States v. Kupfer, 3 USCMA 478, 13 CMR 34, decided this date. If we are to escape this pitfall, we have no choice but to scan carefully such a record as the present one for the purpose of ascertaining whether minimum standards have been met. Here we have done just that, and the conclusion of all of us has been stated in the principal opinion. Necessarily in dealing with the problem, each case must rest on its own bottom.