**UNITED STATES**

v.

**Mark J. SIMPSON, Seaman Recruit, U. S. Coast Guard.**

**CGCM 9942.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 27 June 1975.

Decided 1 March 1976.

Appearances: Military Judge: CAPT Richard M. Thomas, USCG. Trial Counsel: LT Stephen E. Hart, USCGR. Defense Counsel: LT John E. Sineath, USCGR. Individual Counsel: Jerome W. Flanagan, Esq. Appellate Defense Counsel: LT Patricia L. Shebest, USCGR. For the United States: LT Michael L. Kudalis, USCGR.

## OPINION OF THE COURT

ROSENWASSER, Chief Judge:

There has been delivered to this Court 17 plastic boxes containing videocassettes and an assortment of papers for the Court's appellate review under Article 66(b) UCMJ, 10 U.S.C. § 866(b). The material referred to us purports to be the record of trial in the general court-martial case of Seaman Recruit Mark J. Simpson, who contested the charges against him, was convicted on three counts, and was sentenced to a dishonorable discharge, forfeitures and confinement at hard labor for two years.

In due course an appellate defense brief containing nine assignments of error was submitted. We take note only of the first, which was assigned as follows:

I. THE JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR A WRITTEN TRANSCRIPT OF THE COURT-MARTIAL PROCEEDINGS

A. THIS VIDEOTAPE TRANSCRIPT IS NOT IN FACT A VERBATIM TRANSCRIPT AS REQUIRED BY THE MANUAL FOR COURTS–MARTIAL

B. A VIDEOTAPE TRANSCRIPT FAILS AS A MATTER OF LAW TO SATISFY THE REQUIREMENT OF THE MANUAL FOR COURTS–MARTIAL FOR A VERBATIM TRANSCRIPT

C. THE COAST GUARD HAS NOT ADOPTED SUFFICIENT STANDARDS FOR THE USE OF VIDEOTAPE TRANSCRIPTS

D. THE USE OF A VIDEOTAPE TRANSCRIPT DEPRIVES THE DEFENDANT OF SUBSTANTIAL RIGHTS

1. RIGHT TO A COPY OF THE RECORD OF TRIAL

2. RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

3. RIGHT TO A FAIR TRIAL

E. USE OF A VIDEOTAPE TRANSCRIPT DENIES THE DEFENDANT A PROPER APPELLATE REVIEW.

We directed that preliminary argument be heard, limited to these questions:

1) Whether a videotape transcript fails as a matter of law to satisfy the requirements of the Uniform Code of Military Justice and the Manual for Courts-Martial for a verbatim transcript; and

2) Whether the defendant has been deprived of due process or a fair trial as a result of the television videotaping of the trial proceedings.

A brief limited to the issues framed by the Court was submitted by government counsel, and we heard argument on 10 February 1976.

For the reasons stated below we find that a lawful "record" within the meaning of Article 66(c) is not before the Court, and that the videotapes without a transcript in writing do not satisfy the current requirements of law rements of law for producing a record of trial. We find further that Commandant Notice 5810 of 20 February 1975 which purported to authorize "the use of videotape as the transcript in general and special courts-martial" in the Coast

Guard is itself unauthorized and has no legal efficacy.

We deal here with a statutory system making it mandatory for this Court to review Simpson's trial. Pertinent to the instant case, Congress directed that the trial counsel, under the direction of the court, "prepare the record of the proceedings" (Art. 38, 10 U.S.C. § 838); directed that "the record" be forwarded to the convening authority for initial action (Art. 60, 10 U.S.C. § 860); directed review by a legal officer prior to such action (Art. 61, 10 U.S.C. § 861); directed that "the entire record" be sent to the Judge Advocate General (Art. 65(a), 10 U.S.C. § 865(a)); directed the Judge Advocate General to refer "the record" to the Court of Military Review (Art. 66(b)); and directed the Court of Military Review to determine the findings and sentence which should be approved "on the basis of the entire record" (Art. 66(c)). Further, Congress empowered the Court of Military Review "in considering the record" to weigh the evidence and judge the credibility of witnesses "recognizing that the trial court saw and heard the witnesses." (Congress did not envision the Courts of Military Review also seeing and hearing the witnesses.) Congress, in enacting the UCMJ did not deem it necessary to prescribe the form, contents or other details as to records of trial. But Congress did enact into positive law the requirement for a record. As to general courts-martial, Article 54, 10 U.S.C. § 854 states:

(a) Each general court-martial shall keep a separate record of the proceedings in each case brought before it.

And, the official commentary on Article 54(a) said:

It is intended that records of a general courts-martial shall contain a verbatim transcript of the proceedings.[1]

Since Congress did not legislate on what would constitute "the record" mentioned in the cited Articles of the Code, one must look elsewhere. The power to make rules concerning records of trial was given to the President. That power derives from Article 36, 10 U.S.C. § 836, whereby Congress delegated to the President the authority to make procedural rules, with the limitation that they not be contrary to or inconsistent with the Code. By Article 140, 10 U.S.C. § 940, Congress permitted the President to redelegate his rule-making authority. In *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962) the Court of Military Appeals found Article 36 to be a valid delegation of power to the President, stating that

the rule is well established that Congress may delegate to the President . . . the power to make regulations to fill up details and implement statutory provisions, or to determine the details of the legislative scheme. And, further, when regulations are so adopted, they "have the force of law." (p. 118)

The Manual for Courts-Martial represents an exercise by the President of his legal authority under Article 36. We see from the Manual that the President extensively exercised his power to make rules with regard to records of trial, while redelegating very little of this authority. He devoted a chapter in the Manual to "Records of Trial"—Chapter XVI, with paragraph 82 and nine subparagraphs covering records in general courts-martial, and paragraph 83 covering inferior courts-martial. He also made rules concerning records of trial in other parts of the Manual. See, for example, Appendix 9, furnishing a guide for "when a verbatim record is prepared"; paragraph 49, directing what the reporter must do and may do; paragraph 15*b*, demanding "a complete and verbatim record" for BCD special courts-martial; and paragraph 79*e* prescribing procedures applicable to summary court records, but with permission to the Secretary of a Department to "otherwise prescribe by regulations."

Paragraph 82*b* of the chapter on Records of Trial, in both the 1951 and the 1969

---

1. House Hearings on H.R. 2498, 81st Cong., 1st Sess., 1949, page 1084; Senate Report No. 486, 81st Cong., 1st Sess., page 24.

Manuals, directed that the general court-martial record "set forth a verbatim transcript." The demand of paragraph 82b for a "verbatim transcript," although going beyond the express demand of the Code, was upheld by the Court of Military Appeals in *United States v. Nelson*, 3 U.S.C.M.A. 482, 13 C.M.R. 38 (1953). The 1969 Manual additionally provided for exceptions—acquittals, aborted trials, other cases—when the "transcripts needs not be verbatim." The President gave permission, however, to the Secretary of the Department concerned to require by regulations a verbatim record in these instances.

Both paragraph 49b(1) and paragraph 82 a, NCM 1969, make mention of "electronic" recordings, but in neither place does the Manual suggest that an electronic recording can *be* the record, or that it is acceptable as a substitute for the transcript which the record is to set forth, 49b(1) directs the reporter to record the proceedings and testimony, and goes on to say that the reporter

may do this *in the first instance* in longhand, shorthand, or by mechanical or electronic means. (emphasis supplied.)

82a directs the trial counsel to retain or cause to be retained

any stenographic or other notes or any mechanical or electronic recordings from which the record of trial was prepared for such a period as may be prescribed in appropriate regulations.

This last quotation is interesting not only for the recognition of electronic recordings but also for the redelegation of authority. It is an example of the type of thing with respect to records of trial that the President will allow the Departments to regulate: they can prescribe the number of days for retention of stenographic notes or tapes after the record has been transcribed. There are other examples. The President will allow "the publications of the Secretary" to prescribe the *form for the index* to the record of trial (App. 9, p. 1, Note). He

will allow the Secretary to regulate the *sequence* of the papers making up the record of trial (App. 9e). As noted above, the Secretary can require a verbatim record where the President has given permission for a summarized one. More importantly, the Secretary can issue regulations with respect to certain non-BCD special court-martial records (para. 83b) and summary court records (para. 79e). The silence of the Manual as to the existence of any authority in the Secretary of a Department to prescribe by regulation that an electronic or mechanical recording of the events of trial in the first instance, may take the place of a transcript in writing in the final product, is eloquent.

We think it evident from an inspection of the Manual's provisions, that the "transcript" referred to in connection with general court-martial records of trial (para. 82b) and special court-martial BCD cases (para. 83a and 15b) means just one thing—a form of record that can be read and studied. From the days when records of trial were produced in court-martial cases by custom and usage [2] to the present day when they are required by statute law, the record produced has been a written or printed record. The word "transcript" itself means a writing. When the Supreme Court speaks of the right of an indigent defendant to be furnished a transcript of his entire trial, the word transcript means just that. Thus, Mr. Justice Goldberg in *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964):

As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error . . . (p. 288, 84 S.Ct. p. 431).

Implicit in the President's rules in the Manual—rules which have the force of law—is

---

**2.** While no *statutory* requirement for a record of trial in Army cases existed before 1916, Colonel Winthrop noted

It is yet the uniform usage of our service for all such courts, whether general or inferior,

to make and render formal records of the proceedings of all cases tried by them . . (Winthrop, Military Law and Precedents, 1920 reprint, page 502).

the *requirement* for a record that is written or printed.

We think it evident also that the President has for the most part reserved to himself the authority to make the rules for records of trial. The Secretary of a Department can prescribe rules pertaining to the record only when the President has said he may. Authorization for the substitution of videotapes in place of the transcript with which lawyers and judges have been trained to deal would bring about a profound change in the established practice. It is plain that neither the Congress nor the President has authorized such a change. Commandant Notice 5810 [3] which purported to authorize "the use of videotape as the transcript" in Coast Guard courts-martial was issued without authority from the President. It is in derogation of the legal authority which belongs to the President and is without effect.

It follows that a lawful record of trial in the case above entitled has not, as yet, been referred to this Court; and consequently, the Court is not empowered to make a determination in the case.

We do not reach the due process question.

The material delivered to the Court of Military Review is returned to the Chief Counsel, U. S. Coast Guard.

Judge BRIDGMAN, Jr., concurs.

Judges MAGUIRE and LYNCH concur in separate opinions.

Judge YOUNG dissents.

MAGUIRE, Judge, concurring:

One point I would like to stress in my agreement with The Opinion of the Court is the literal meaning of the word "transcript." The Court has said that a transcript is a "writing." If one resorts to dictionaries to expand the meaning of the word in the light of modern usage and

lately developed techniques, I insist that metaphorical uses of the word "transcript" or of its kindred words, "transcribe" and "transcription," and the "back formations" by lazy language uses, like "radio transcription" and "voice transcript" have no place in fixing the meaning of the word as used in legislative writing like the Manual. I subscribe to no theory now that other forms of reproduction are or are not, may be or may not be, more desirable or more useful in future, or even today. These considerations do not bear upon what the Manual says and means. If progress demands change, so be it; let the Manual be changed. It cannot be changed by one without authority to do so, and it is not to be construed to say today what it does not say through a flight of fancy by an interpreter.

I agree completely with that part of the opinion which characterizes the Commandant Notice and the subsequent amendment to the Coast Guard Supplement. The opinion, however, appears to accept that the Commandant may, by delegated authority, act for the Secretary. I hold to my view previously expressed (dissenting in *United States v. Day*, 1 M.J. 1167 (C.G.C.M.R. 1975)) that in the absence of a provision by the Congress for delegation of regulatory powers given to the Secretaries by the Code, and in the absence of a provision by the President, under Article 140, that a Secretary may subdelegate a regulatory power delegated to him by the President, a purported delegation by the Secretary of Transportation to the Commandant to prescribe regulations in the area of military justice (10 U.S.C. §§ 801–940) is invalid.

LYNCH, Judge, concurring.

In view of the conclusion of the Court that the Manual for Courts-Martial does not permit or authorize the use of videotape as the "transcript," I see no need for any extended discussion of the Commandant In-

---

**3.** The Notice was superseded by an amendment to the Coast Guard Supplement to the Manual for Courts-Martial, Section 0103(6), providing:
  Videotape records of trial are authorized in the Coast Guard . . . Videotape records

of trial constitute verbatim transcripts within the meaning of paragraphs 82 and 83, MCM 1969 . . .

struction. I would point out, however, that only so much of the Commandant Instruction as purports to authorize the use of videotape as the transcript is inoperative as being in derogation of the Manual. The remainder of the Instruction authorizing the use of videotape for the recording of the trial events in the first instance is not affected by the Court's decision.

While I agree with the ultimate conclusion of the Court in this case, I prefer to reach the result in a more direct manner.

The terms "record," "trial record," and "record of trial" appear in several articles of the UCMJ.[1] The Code, however, does not address, or describe, what constitutes the record.

The President, exercising his authority under Article 36, UCMJ, has provided regulations and information for the contents of records of trial. Chapter XVI, paragraphs 82 and 83, MCM, specifically pertain to "Records of Trial." Paragraph 49, MCM, pertains to the duties of the court reporter. Paragraph 49b(1), MCM, requires the court reporter to "record the proceedings of and testimony taken before courts-martial, courts of inquiry, or military commissions for which he is detailed;" and further states that the reporter "may do this in the first instance in longhand, shorthand, or by mechanical or electronic means." Paragraph 49b(2), MCM, then goes on to require that the reporter prepare an original, and a certain number of copies, of each record and of all documentary exhibits.

Clearly, what is contemplated is that the reporter, utilizing the product of whatever method chosen to preserve the trial events (proceedings and testimony) in the first instance, prepares "an original and . . . copies of each record and of all the documentary exhibits."

Paragraph 82b(1), MCM, requires that the record of trial set forth, in certain cases, a verbatim transcript and permits, in other cases, only a summarized transcript. In either event, 82 and 83, MCM, clearly mandate that the trial record contain some form of *transcript* of the proceedings and testimony whether it be verbatim or summarized.

It should be obvious that the Manual provisions contemplate, and require, a two-stage process with respect to the development of a record of trial. The first stage is that of preserving the trial events, in the first instance, by a court reporter utilizing any of the means set forth in 49b, MCM. The second stage is the preparation of the transcript of the proceedings and testimony which, when coupled with a variety of documents, becomes the record of trial for purposes of review by the convening authority, supervisory authority, the Judge Advocate General, the Court of Military Review, and the Court of Military Appeals. It should be equally obvious, that the Manual does not lend itself to an interpretation that would permit substituting for the transcript the product of the court reporter's efforts in preserving the trial events in the first instance. In other words, the Manual does not permit, nor authorize, the inclusion of the reporter's longhand notes, shorthand notes, audio tapes, videotapes, motion picture films, or other mechanical or electronic preservation of the trial events in the first instance in the record of trial in place of the transcript. What is required by the Manual is a written transcription of the reporter's product in recording the trial events.

I also believe that, while in view of our disposition of this case it is unnecessary to decide the question of due process, this Court should state that it is the opinion of the Judges that the process of utilizing videotape as the method of preserving the trial events in the first instance does not *per se* violate due process as a matter of law under the system existing in the Coast Guard.

---

1. See, e. g., Arts. 38(a), 54, 60, 61, 62, 65, 66, 67, 69, and 76, 10 U.S.C. §§ 838(a), 854, 860–861, 865–867, 869, 876.

YOUNG, Judge, dissenting:

My colleagues hold "that a lawful 'record' within the meaning of Article 66(c) is not before the Court, and that the videotapes without a transcript in writing do not satisfy the current requirements of law for producing a record of trial." They reason that "the word 'transcript' itself means a writing" and that "implicit in the President's rules . . . is the *requirement* for a record that is written or printed." Referring to the substitution of videotapes for the historical written transcript, they find that "It is plain that neither the Congress nor the President has authorized such a change." They conclude, therefore, that since the videotape is not a "writing" it cannot be a transcript and without the required transcript there is no proper record before this Court.

The majority has erred in construing the requirement for a transcript to permit only a written transcript. It is obvious from Judge Maguire's concurring opinion and the majority's inability to find a specific requirement, that there is no authority for equating verbatim to written. It is quite clear, however, that the Congress never used the words "written" when referring to either the record or transcript.[1] That Congress did know and appreciate the value of specifying "written" when they intended something to be "written" is clearly illustrated by Article 61, UCMJ, which requires a "written" opinion on the record. The simple fact is that there is no requirement, specific or implied, in the UCMJ or MCM, that a transcript must be "written." This Court, by generating such a requirement is judicially legislating a requirement not intended by the Congress and is usurping a power specifically delegated by the Congress to the executive branch.

To conclude that the only legal transcript is a conventional written or printed word description of the events at trial and that any other method of describing those events is not now permitted, is precisely the type of fanciful construction so roundly condemned, in another context, by Judge Maguire. That type of construction raises form above purpose and disregards the rights of an accused to the most complete and accurate record available.

This Court is empowered to judge the credibility of the witnesses. To ignore a method which provides a live visual record of the conduct and demeanor of the witness in favor of a sterile written word description is to abrogate the Court's responsibility. That this opportunity to see the witness is important is dramatically evidenced by the fact that upon viewing the videotape transcript of one of the first trials in which videotape was used, the Coast Guard officer reviewing the record discovered that the written, authenticated record was in error.[2] The written record indicated that the accused had pleaded guilty to Charge I, specification I. The tape showed that the accused had actually entered a not guilty plea to that charge and specifications.

Certainly the use of videotapes in place of the transcript with which lawyers and judges have been trained to deal will bring about profound changes in the established practice. Equally certain is the fact that this is no basis for denying the use of a system that better protects the rights of an accused in a criminal trial. This Court cannot reject a videotape transcript simply because lawyers find it more convenient to work with another type of transcript. A conscientious appellate advocate should welcome the most complete and accurate transcript that can be produced, for that is the only transcript that can maximize the opportunity for detecting error prejudicial to the accused. As Mr. Justice Goldberg found in *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), anything short of a complete transcript is incompatible with effective appellate advocacy. (p. 288, 84 S.Ct. 424)

---

1. See UCMJ, Arts. 28, 36, 38, 39, 45, 50, 59, 60, 61, 62, 63, 65, 66, 67, 69, 76, 135, 10 U.S.C. §§ 828, 836, 838, 839, 845, 850, 859–863, 865–867, 869, 876, 935.

2. *United States v. Denson*, C.G.C.M.S. 23161 (1975).

The majority reasons that since Congress did not specifically state in the legislation what constitutes "the record", it granted to the President, in Article 36, the power to make rules concerning records of trial and the President has not authorized the use of videotape transcripts. This rationale ignores a basic dilemma confronting the Court in this case by confusing the "record" with the "transcript." The issue is not the record. The issue is the adequacy of the transcript which is required to be a part of the record.

It is simplistic to assume that if the President has the authority to make rules concerning the content of the record, he necessarily has the authority to make rules concerning the transcript. The Congress intended "that the records of a general court-martial shall contain a verbatim transcript"[3] and the President required that the record "will set forth a verbatim transcript."[4] Both recognized that the transcript is a component part of the record and is not the record itself. Indeed, by including in the Manual for Courts-Martial extensive instructions on records of trial, but no instructions whatsoever on transcripts, the President distinguished the two. To paraphrase the words of the majority—the silence of the Manual as to regulations concerning preparation of the transcript is eloquent.

Why, when there is an abundance of regulations concerning the record, are there none concerning the transcript? Could it be that the President lacks the authority to prescribe the form of the transcript?

Article 36 is both a grant of authority and a limitation of that authority. It states that "the procedure, including modes of proof, in cases before courts-martial, . . may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter." If, as my colleagues have said, the President relied upon Article 36 for authority to make rules with regard to records of trial; he could not have ignored the dual limitations in that article, unless he considered them to be not practicable. The rules must comply with the criminal law practices of the United States District Courts, and they may not be inconsistent with the Code.

Article 36 refers to "the procedure . . in cases before courts-martial." Is the transcript that type of "procedure" envisioned to be regulated by the President? A transcript is not "modes of proof" or "rules of evidence." It is not a "principle of law." I have no difficulty concluding that the right of an accused to a complete and authentic record, including a transcript, is a principle of law. Without such a record, the appellate review required by the Uniform Code of Military Justice cannot be performed, and the fundamental rights of the accused cannot be protected. However, it is the content of the record and not the form that is important. It is the purpose of the requirement and not the method of presentation that must be considered. In the United States District Courts, requiring a court reporter to record all proceedings in criminal cases is designed to preserve a correct and authentic record free from infirmities of human error and to safeguard the defendant's rights,[5] but the duty of supervising the court reporter and the preparation of the transcript by the reporter is one of routine administration.[6] In my view, the President may, pursuant to Article 36 and as a principle of law, prescribe regulations ensuring a complete and authentic record, and can require the inclusion of a transcript in that record, since such a requirement is consistent with the practice of

3. House Hearings on H.R. 2498, 81st Cong., 1st Sess., 1949, page 1084; Senate Report No. 486, 81st Cong., 1st Sess., page 24.

4. Paragraph 82(a) MCM.

5. *United States v. Taylor*, C.A.4 1962, 303 F.2d 165.

6. *Hydramotive Mfg. Corp. v. SEC*, C.A.10 1966, 355 F.2d 179.

the United States District Courts and the Uniform Code of Military Justice. However, he may not act inconsistently with either the District Court view that the duty to supervise the reporter and the preparation of the transcript is an administrative matter or inconsistently with the provisions of the Uniform Code of Military Justice.

It is clear that the President has not acted at all with regard to preparation of the transcript. His lack of interest in routine administrative functions is evident from the statement "It is immaterial to the sufficiency of a record whether it [is] kept or written by the trial counsel or by a reporter acting under his direction." [7]

The majority holds that the Secretary can prescribe rules pertaining to the record only when the President has said he may. I disagree. The Secretary has an independent authority as it relates to the supervision of trial counsels and reporters and consequently to the preparation of transcripts which become part of the record. Article 28 authorizes the Secretary to prescribe regulations concerning the detail or employment of court reporters. Supervision of the reporter is vested in the trial counsel. (In this case, both Coast Guard personnel) Department of Transportation Order 1100.1A provides, in part, that "The Commandant, with respect to the Coast Guard, is authorized to exercise the authority granted the Secretary as Executive head of a department, by any statute, Executive Order, or regulation." Finally, CG–229, Coast Guard Organization Manual, Part II provides that the Chief Counsel shall administer all matters within the purview of the UCMJ and the MCM. Therefore, Commandant Notice 5810 and the subsequent amendment to the Coast Guard Supplement to the Manual for Courts-Martial which authorizes videotape records of trial and states that videotape records constitute verbatim transcripts are lawful exercises of authority by the duly authorized representative of the Secretary pursuant to Article 28 of the Code. The President cannot abrogate that authority.[8]

I agree with Judge Lynch that the process of utilizing videotapes as a method of preserving the events at trial does not *per se* violate due process as a matter of law under the system utilized in the Coast Guard.

---

7. Paragraph 82(a) MCM.

8. *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pat.) 524, 610, 9 L.Ed. 1181 (1838).