UNITED STATES

v.

Christopher A. SKINNER, Fireman,
U.S. Coast Guard.

Docket No. 853.
CGCM 23701.

U.S. Coast Guard Court of
Military Review.

13 April 1984.

Trial Counsel: LT Catherine M. McNALLY, USCGR.

Defense Counsel: LCDR William P. ATHAYDE, USCG.

Appellate Defense Counsel: LCDR Robert W. FERGUSON, USCG, LT Joseph F. AHERN, USCG, LT Keith M. HARRISON, USCGR.

Appellate Government Counsel: LCDR Stephen R. CAMPBELL, USCG, Lt. Christena G. GREEN, USCGR.

DECISION

PER CURIAM:

Fireman Christopher A. Skinner, USCG, was tried by a special court-martial comprised of a military judge and members on 10 and 11 August 1982. The accused pleaded guilty to and was convicted of the offenses of unauthorized absence from 18 June 1981 until 1 July 1982 in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, and missing the movement of USCGC GLACIER through design on 21 June 1981 in violation of Article 87, UCMJ, 10 U.S.C. § 887. The members sentenced the accused to be discharged from the service with a bad conduct discharge. The findings of guilty and the sentence were approved by the convening authority and by the officer exercising general court-martial jurisdiction.

Appellate defense counsel have filed assignments of error alleging that the record of trial is not verbatim as required to support the sentence to a bad conduct dis-

charge and that the sentence to a bad conduct discharge is inappropriate.

At the commencement of the defense case in extenuation and mitigation defense counsel offered as Defense Exhibit D certain excerpts pertaining to Personality Disorders from what was described in the record only as the DSM (Diagnostic Statistical Manual of Mental Disorders, 3rd Ed., American Psychiatric Association). The military judge asked defense counsel whether a cover page was available to identify the source of the excerpts. Counsel replied that one could be obtained from the legal office and a recess was taken for that purpose.

When the court reopened the recording equipment malfunctioned. A summary of proceedings which were not recorded is reported at page 57 of the record of trial as follows:

"MJ: The court will come to order. Please be seated.

TC: All persons required to be present are present. No person required to be present is absent.

AT THIS POINT THERE WAS A RECORDING MALFUNCTION IN WHICH APPROXIMATELY TWO TO FOUR MINUTES OF OF (sic) RECORDING TIME WAS LOST. THE FOLLOWING IS A SUMMARY OF WHAT TOOK PLACE DURING THAT TIME.

The military judge and the defense counsel agreed that there was not a page from the DSM that would suffice as a cover page for the excerpt from the DSM. The defense counsel offered Defense Exhibit D for identification, excerpts from the DSM, consisting of three pages; Defense Exhibit E for identification, copies of the accused's Marks Sheets (CG–3306); Defense Exhibit F for identification, the accused's Achievement Sheet (CG–3303); Defense Exhibit G for identification, Administrative Remarks from the accused (sic) service record (CG–3307); Defense Exhibit H for identification, Letter of Appreciation from the accused's Service Record dated 18 March 1980; and Defense Exhibit I for identification, Admin-

istrative Remarks from the accused's service record (CG–3307).

There being no objections from the prosecution, the military judge accepted all the above mentioned Defense Exhibits into evidence.

The defense stated he was ready to present evidence in Extenuation and Mitigation and called his first witness.

AT THIS POINT THE RECORDING EQUIPMENT RETURNED TO NORMAL."

█ The defense exhibits admitted during the malfunction of the recording equipment are all included in the record of trial and the record reveals at pages 72 and 81 that they were provided to the members of the court for their use during the deliberations on sentence. Thus, the sense of the proceedings is discernible for our review.

█ Since their decision in *U.S. v. Nelson,* 3 U.S.C.M.A. 482, 13 C.M.A. 38 (1953) the Court of Military Appeals has interpreted the requirement for a verbatim record to support certain sentences to mean that such records must be "substantially verbatim." Insubstantial omissions from a record of trial do not affect its characterization as a verbatim transcript. See *U.S. v. Lashley,* 14 M.J. 7 (C.M.A.1982) and cases cited therein.

Nothing of substance has been omitted from this record. No issue was raised as to the admissibility of the proffered exhibits, they were admitted and are attached to the record. The absence of a word for word account of defense counsel's offer of each exhibit and its routine acceptance by the military judge is so insubstantial that the verbatim quality of the record is wholly unaffected. We note also that trial defense counsel did not question the sufficiency of the record at the time he examined it initially, by way of an Article 38(c), UCMJ, 10 U.S.C. § 838(c), brief or as a matter of rebuttal to the staff legal officer's review. See *U.S. v. McCullah,* 11 M.J. 234 (C.M.A. 1981); *U.S. v. Eichenlaub,* 11 M.J. 239 (C.M.A.1981); *U.S. v. Lashley,* supra; *U.S. v. Goode,* 1 M.J. 3 (C.M.A.1975). Thus, the

challenge to the sufficiency of the record is without merit.

Relying on *U.S. v. Shorter*, 45 C.M.R. 518 (C.G.C.M.R.1972), appellate defense counsel contends that a bad conduct discharge is inappropriate punishment for the accused. This argument is based essentially on a report of a sanity board dated 27 July 1982 finding that at the time he committed the offenses of which he stands convicted Fireman Skinner was suffering from a mental disease or defect, i.e., "Infantile personality with symptoms of poor judgment, impulsivity and inability to delay gratification appropriately." Nevertheless, the same board found that the accused did not lack substantial capacity to appreciate the criminality of his conduct, did not lack substantial capacity to conform to the requirements of the law and did possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense.

Other evidence in the record reveals that Fireman Skinner was struck on the head with a piece of wood when he was six or seven years old causing a depressed skull fracture. Part of the skull was removed during emergency surgery leaving an open place in the skull which was subsequently closed by the insertion of a plastic plate. He suffered some from headaches while he was still at home and has complained of severe headaches since joining the Coast Guard. While in recruit training in July 1979 he was sent to the medical clinic for evaluation after he had sat under a pier from 2130 one night until 1900 the next trying to decide whether he wanted to stay in the Coast Guard. There is no record of a psychiatric evaluation having been performed at that time.

The July 1982 diagnosis of Fireman Skinner as suffering from a personality disorder would support action to discharge him administratively notwithstanding his successful completion of recruit training in September 1979 and his subsequent satisfactory service aboard CGC GLACIER until June 1981. Since Fireman Skinner could be discharged administratively, appellate defense counsel argues that we should find a bad conduct discharge inappropriate for him as our Court found a bad conduct discharge inappropriate in *U.S. v. Shorter.*

In *U.S. v. Shorter* there was evidence that slightly over six months after his enlistment Shorter absented himself without authority repeatedly for various periods of time prior to the offense for which a bad conduct discharge was adjudged. One of the prior absences terminated when Shorter was arrested by civilian authorities and placed in jail. He tried to hang himself and was transferred to a state hospital. His condition on admission was described as depressed and suicidal. He was released after two weeks with a diagnosis of "Transient Situational Disturbance, Adjustment reaction of adolescence." Shortly thereafter he was examined at a Public Health Service Hospital and was diagnosed as "Immature personality, severe." Following the unauthorized absence for which Shorter was brought to trial, he was examined twice by different psychiatrists and was found by each to be unsuitable for further service.

■ In Shorter's case, our Court found that a bad conduct discharge was inappropriate. In the course of the opinion our predecessors observed:

"The defense counsel * * * made reference to a number of our previous determinations. It is plain, however, that each case has to be judged on the basis of its own facts. Each accused is a different individual and each record presents a different set of circumstances.

\*    \*    \*    \*    \*    \*

[A] bad conduct discharge should not be approved if a substantial part of the justification for it consists of a demonstration that the accused ought to be administratively separated from the service. If, on the other hand, the record demonstrates that it is fitting as punishment for the particular accused under the circumstances of the offenses for which he stood trial, the court of review should approve it". 45 C.M.R. 518, 519, 521.

Thus, *U.S. v. Shorter* instructs that precedent has little application in determining sentence appropriateness since "each case has to be judged on the basis of its own facts."

In Shorter, the accused was retained in the Coast Guard after it was clear from his course of conduct and the observations of various psychiatrists that he was unfit for further service. The very thing that could have been expected to happen did happen. He again went on unauthorized absence. In that setting, our Court found the bad conduct discharge inappropriate.

■ Fireman Skinner's situation is different. He had served aboard GLACIER for more than a year and a half with average to slightly below average performance marks. His conduct had been satisfactory and he had apparently made an acceptable adjustment to Coast Guard life. There is no indication that his superiors had cause to believe that he suffered from a personality disorder or that he might absent himself without authority because of his inability to adapt to service life. Indeed, the personality disorder was not diagnosed until after the offenses for which the accused stands convicted.

Under the circumstances of this case, we find the sentence to a bad conduct discharge entirely appropriate.

The findings of guilty and the sentence approved on review below are affirmed.

Judge REINING did not participate in the decision in this case.