*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
WOODARD, HUTCHISON, and LAWRENCE,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Eric M. VASQUEZ**
Air Traffic Controller Second Class (E-5), U.S. Navy
Appellant

**No. 201700363**

Decided: 13 June 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Lieutenant Colonel Forrest W. Hoover, USMC. Sentence adjudged 27 July 2017 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of officer and enlisted members. Sentence approved by convening authority: confinement for four years and a dishonorable discharge.

For Appellant: Lieutenant Commander William L. Geraty, JAGC, USN.

For Appellee: Lieutenant Clayton S. McCarl, JAGC, USN; Major Kelli A. O'Neil, USMC.

Judge LAWRENCE delivered the opinion of the Court, in which Chief Judge WOODARD and Senior Judge HUTCHISON joined.

_____

**This opinion does not serve as binding precedent,
but may be cited as persuasive authority under
NMCCA Rule of Practice and Procedure 30.2.**

_____

LAWRENCE, Judge:

The appellant was convicted, contrary to his pleas, of two specifications of sexual assault by bodily harm in violation of Article 120(b)(1)(B), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920(b)(1)(B) (2012).

The appellant raises three assignments of error (AOEs):[1] (1) the record was not substantially verbatim and complete;[2] (2) the military judge erred by erroneously admitting a social media message as a tacit admission; and (3) the evidence is legally and factually insufficient. We find no prejudicial error and affirm.

## I. BACKGROUND

The appellant and the victim, TS, knew each other from their shared hometown and high school. In high school, the appellant and TS's boyfriend, JM, were close friends.

Upon graduation from high school, JM enlisted in the Navy and, shortly thereafter, married TS. The couple moved to Virginia Beach, Virginia, JM's duty station. Although not at the same time as JM, the appellant also joined the Navy and eventually found himself assigned to the Virginia Beach area.

In the summer of 2015 while JM was deployed, TS noticed through shared friendships on social media that the appellant was stationed nearby. She reached out to him and let him know that she was also in Virginia Beach and that they could "hang out."[3] With many common friends and a shared hometown far away from Virginia Beach, the appellant and TS began spending time together.

On 25 September 2015, TS joined the appellant and several of his friends at his apartment. Those assembled started drinking alcohol at the apartment and then went to a local bar. TS consumed several mixed drinks at the bar. After some time at the bar, everyone went their separate ways. However, a small group, including the appellant and TS, returned to the appellant's apartment.

The next morning, TS sent text messages and then called her friends, informing them that the appellant had sexually assaulted her in his upstairs

---

[1] We have reordered the assignments of error.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] Record at 334.

bedroom. One of those friends, TJ, a work supervisor of TS, testified that TS was "crying very frantically."[4] TJ told TS she should call the police, but TS did not want to do so.[5] TS did not contact the local civilian police department or the Naval Criminal Investigative Service (NCIS) until a week later on 2 October 2015.[6]

Over the course of the next several days and weeks both TS and the appellant separately addressed the events in question through social media and text messages with JM and with friends. These exchanges notably included the appellant engaging a smaller group of his hometown friends in a string of messages in which his version of events changed on many key facts over the course of the discussion and was significantly at odds with his trial testimony. Additional facts necessary for resolution of the AOEs are included in the discussion below.

## II. DISCUSSION

### A. Completeness of the Record

The appellant challenges the sufficiency of the record of trial, contending that it was not substantially verbatim or complete. Whether a transcript is verbatim is a question of law we review *de novo*. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014).

The appellant's adjudged sentence of confinement for four years and a dishonorable discharge requires a verbatim transcript. RULE FOR COURTS-MARTIAL (R.C.M.) 1103(b)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.). Our superior court has recognized that were we to insist on a completely inflexible definition, "every record could be assailed as deficient." *United States v. Nelson*, 13 C.M.R. 38, 42 (C.M.A. 1953). Rather, they have consistently held that Article 54, UCMJ, simply requires that transcripts be "substantially verbatim" and not "[w]ord for word." *Davenport*, 73 M.J. 377 (quoting *United States v. Lashley*, 14 M.J. 7, 8 (C.M.A. 1982)). "As such, a transcript may be deemed 'substantially verbatim' though it has certain omissions." *Id.* While a substantial omission raises a rebuttable presumption of prejudice, "[i]nsubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a

---

[4] *Id.* at 431.

[5] *Id.* at 432.

[6] *Id.* at 375.

complete one." *United States v. Henry*, 53 M.J. 108, 111. (C.A.A.F. 2000). "[I]f the record is sufficiently complete to permit reviewing agencies to determine with reasonable certainty the substance and sense of the question, answer, or argument, then prejudice is not present." *Nelson*, 13 C.M.R. at 42 We determine whether an omission is substantial on a case-by-case basis. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999). "[O]missions are qualitatively substantial if the substance of the omitted material 'related directly to the sufficiency of the Government's evidence on the merits,' and 'the testimony could not ordinarily have been recalled with any degree of fidelity.' " *Davenport*, 73 M.J. at 377 (quoting *Lashley*, 14 M.J. at 9). "Omissions are quantitatively substantial unless 'the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness.' " *Id.* (quoting *Nelson*, 13 C.M.R. at 43) (alteration in original).

In *Davenport*, the transcript omitted the entire testimony of a government merits witness. The Court of Appeals for the Armed Forces (CAAF) concluded "the omission was substantial both quantitatively, because the *entire* testimony was omitted, and qualitatively, because the substance of the omitted testimony presumably relates directly to the Government's evidence on the merits and could not be recalled with fidelity." *Id.* (emphasis added). Conversely, in *Nelson*, despite a missing word or phrase in a question by counsel, or overlap of question and response to a witness, the overall context of the examination allowed the appellate court to discern the substance of the answer through the remainder of the witness's responses. "Without dealing with the other omissions separately and specifically, we can gather them together and conclude readily that not one fact of substance or materiality to a legal or factual issue is missing from the transcript." *Nelson*, 13 C.M.R. at 43.

Here, the military judge received the record for his authentication. Finding errors, he sent it back for correction.[7] Once returned to him, the military judge made numerous corrections and specifically noted that, while there remained a number of "inaudible" notations in the transcript, the inaudible portions "do not appear to effect any significant testimony or ruling."[8]

Likewise, in our review of the record, we find the inaudible and untranscribed portions of the recording of the appellant's court-martial were

---

[7] We note that the appellant, through his trial defense counsel, had opportunity to examine and correct the record prior to its authentication. Despite this opportunity, there was no claim of a substantial omission.

[8] Record at 949.

nearly all confined to what would appear, in context, to be a missing word or two and did not hamper our ability to discern the substance of the matters being addressed. As such, the missing information from the transcript was neither qualitatively nor quantitatively substantial. Although this record is imperfect, we find it substantially complete and verbatim and decline to grant relief.

## B. Admission of Social Media Message

The appellant contends the military judge erred by admitting into evidence, over his objection, Prosecution Exhibit (PE) 33, a social media message exchange between the appellant and WS, TS's sister-in-law. WS initiated the exchange with the appellant after she learned of TS's allegations.

> **WS:** You're a piece of s[***] and [JM] is going to know what really happened and you're gonna be dead to him. I can't believe you and it disgusts me that you're representing our nation in the military. I can't believe you would do this to the wife of someone who considered you to be a best friend and to a family member of people who took you in when you had nowhere else to go. You're among the lowest of people on earth and you will probably never know the kind of damage that something like this will do to a woman. [TS] will never be the same again. And it's your f[***]ing fault.

> **Appellant:** There is now [sic] way I can completely understand how she feels. I've been feeling like complete s[***]. I can't take back what I did. I've told [JM] what I did[.] I completely understand that he's going to completely cut me off out of his life. The hurt I put others through is . . . unforgivable. I've never felt s[***]ier.

> **WS:** You should really turn yourself in because you need help. Raping somebody is one of the lowest things a person can do and you've gotta be sick in some way or something to have done it. She's going to believe it was her fault for the rest of her life and feel gross and violated. [JM] was the only guy she'd ever been w[ith] and now she has to deal w[ith] this s[***]. I'm glad that you told [JM] at least and that you're feeling s[***]y because it means you have some kind of a conscience. Don't try to talk to her. Don't try to apologize. Honestly, the only thing you can do to not hurt her anymore i[s] never talk to her or [JM] again.

**Appellant:** Whatever it takes to make her feel any better. I know the situation is not going to heal itself. But I will do whatever. She and [JM] meant so much to me and [I] threw it away. They are irreplaceable in there [sic] on [sic] aspect and I'll never find anything near to what kind of persons they were.

**WS:** You should go talk to your command or his command or somebody on the base and get help.

**Appellant:** If it takes that.

**Appellant:** I want to again apologize to you and your family. There's no way I expect you to accept it. I'm sorry[.]

**WS:** I d[on't] t[hink] it should matter what it takes for her. It should be something you do because it's the right thing to do to make sure that you never do this to another woman again. And yeah, I definitely don't think I can accept an apology because this is just beyond apologizing. But thank you at least for apologizing and I really do hope that you'll get help.

**Appellant:** I know I wish I could say or do the right thing to help her. But the only thing I can do like you said is to get help and hopefully time can do its thing[9]

*1. The legal standard of review*

We review a military judge's admission or exclusion of evidence for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

Relevant evidence, as defined by MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 401, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), may be excluded by the military judge "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." MIL. R. EVID. 403. So long as the military judge conducts a proper balancing test, the ruling will not be overturned

---

[9] PE 33.

unless there is a clear abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). We owe less deference to the military judge who fails to articulate a MIL. R. EVID. 403 balancing analysis on the record and no deference will be afforded to a ruling in which the MIL. R. EVID. 403 analysis is altogether absent. *Id.*

### 2. Consideration of Prosecution Exhibit 33

During cross-examination, the trial counsel confirmed with the appellant the accuracy of what each party wrote in their exchange. When the trial counsel moved to admit PE 33, the trial defense counsel had no objection, but the military judge directed, *sua sponte*, an Article 39(a), UCMJ, session to consider the relevance of the evidence.[10]

Exercising his gatekeeping role under MIL. R. EVID. 104(a), the military judge was concerned with the "diatribe" of WS and her expression of negative thoughts about the accused—particularly in the first sentences of PE 33— asked the parties to weigh in, which they did as follows:

> **TC:** It's relevant for him having been called, colloquially, a "rapist," and his failure to deny that. So it's his statement, and the absence of which, which contradict his testimony in court, in that he doesn't put forth the version of facts—
>
> **MJ:** Tacit admission?
>
> **TC:** Yes, sir.
>
> **MJ:** All right. Defense, any objection?
>
> **DC:** Sir, yes; objection based on the fact that just the length and the content of the diatribe is unfairly prejudicial.[11]

Throughout the Article 39(a), UCMJ, session in conducting a line-by-line review of the exchange that began with the first two pages of screen captures,[12] the trial defense counsel expressed concern with what he contended

---

[10] Record at 607.

[11] *Id.* at 608.

[12] As screen captures, PE 33 consisted of six pages in total. But much of the material was repeated on multiple pages since longer text blocks in succession were truncated when page space ran out and the entire text of that reply would start anew on the following page.

were unfairly prejudicial and irrelevant opinions by WS in attacking the appellant. But he acceded to the bulk of the text providing proper context to the response by the appellant.[13] The military judge conducted his balancing test under MIL. R. EVID. 403, finding that, with the exception of the first two sentences of PE 33, the probative value was not substantially outweighed by the danger of unfair prejudice and there was value in putting the appellant's response into context.[14]

When they moved to consider pages three and four,[15] the trial defense counsel again offered that the material was unfairly prejudicial and outweighed its probative value.[16] The military judge conducted the MIL. R. EVID. 403 balancing test and found the probative value was not substantially outweighed by the danger of unfair prejudice and the text from WS put the appellant's reply in context.[17]

At this point, the trial defense counsel again objected, this time voicing hearsay as his basis.

> **DC:** Sir, we renew our objection on the ground of hearsay.
>
> **MJ:** It's not being offered for the truth of the matter. It's being offered to put the accused's statement into context and, therefore, is not hearsay and that objection is overruled.
>
> **MJ:** Anything else?
>
> **DC:** Just that the accusation going to the context of the text message, the accusation is the only statement necessary to establish that this is him responding to the accusation so anything else is—
>
> **MJ:** The Court's already ruled on that. All right. Anything else on this exhibit?
>
> **TC:** No, Your Honor.

---

[13] Record at 609.

[14] *Id.* at 610.

[15] Starting with the appellant's "There is now [sic] way I can completely understand how she feels" and continuing with WS's reply beginning "You should really turn yourself in because you need help." PE 33 at 3-4.

[16] Record at 611.

[17] *Id.* at 612-13.

    **MJ:**    Defense?

    **DC:**    No, sir.[18]

Ultimately, PE 33 was admitted and published to the members.

We agree with the military judge that PE 33 was not hearsay. The portions of PE 33 attributable to WS were not offered to prove the truth of the matters asserted. MIL. R. EVID. 801(c)(2). Those portions attributed to the appellant were offered by the prosecution during his cross-examination as the appellant's own statement. MIL. R. EVID. 801(d)(1), 801(d)(2). Despite the trial defense counsel's objection, this message exchange was clearly relevant to show the appellant's consciousness of guilt. Additionally, the appellant's tacit admission constituted impeachment of his trial testimony.

We also give great deference to the balancing test as articulated by the military judge, finding the probative value of the objected-to exhibit not to be substantially outweighed by any prejudicial effect. In doing so, we find no clear abuse of discretion by the military judge in admitting PE 33.

## C. Legal and Factual Sufficiency

Finally, the appellant contends that his convictions were legally and factually insufficient. We review *de novo* questions of legal and factual sufficiency. Article 66, UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

To determine legal sufficiency, we review the evidence "in the light most favorable to the prosecution" and ask whether "a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (quoting *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001)).

In testing for factual sufficiency, we "weigh[ ] the evidence in the record of trial and mak[e] allowances for not having personally observed the witnesses" in order to determine whether we, ourselves, are "convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. We do not defer to the trial court's decision, but take a "fresh, impartial look at the evidence" and must "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

---

[18] *Id*. at 613.

*1. Legal sufficiency*

In order to sustain the conviction for sexual assault, the government must have proven beyond a reasonable doubt in each of the two specifications under the sole charge that the appellant: (1) committed a sexual act upon TS; and (2) that he did so by causing her bodily harm. Art. 120(b)(1)(B), UCMJ.

Here, it is uncontroverted that the sexual acts occurred—both the appellant and TS testified to this at trial. But the appellant contends that the government failed to satisfy its burden that the alleged bodily harm *caused* the commission of the sexual acts. In Specification 1 of the Charge, the appellant penetrated the vulva of TS with his tongue "by causing bodily harm to her, to wit: pulling down her underwear and grabbing her hips."[19] In Specification 2 of the Charge, the appellant penetrated the vulva of TS with his penis "by causing bodily harm to her, to wit: pressing [his] body against [ ] T.S."[20]

At question is the meaning of the word "by" in the phrase "by causing bodily harm" in the statute. We review issues of statutory interpretation *de novo. United States v. Wise,* 64 M.J. 468, 473 (C.A.A.F. 2007). And our review of the statute begins by examining the language of the statute. *United States v. McDonald,* 78 M.J. 376, 379 (C.A.A.F. 2019). However, where, like here, terms are not directly defined in statute, a word's ordinary meaning should apply. *Burrage v. United States*, 571 U.S. 204, 210 (2014). Both the government and the appellant agree that the ordinary meaning of "by" is "indicating the means of achieving something."[21] The parties differ however, and this issue turns, on whether the single word "by" requires the government to show strict "but-for" causation as contended by the appellant—or whether it means, as advanced by the government, that the alleged bodily harm played some role in the commission of the sexual act.

The appellant argues that we should follow the Supreme Court's analogous holding in *Burrage* in which the Court rejected a more general meaning of "results from" language and instead requiring a showing of "but-for" causation. There, the statutory language in question from the Controlled Substances Act imposed a mandatory minimum that enhanced the sentence of one who distributes a Schedule I or II drug and "death or serious bodily injury *results from* the use of such substance." *Burrage*, 571 U.S. at 206 (empha-

---

[19] Charge Sheet.

[20] *Id*.

[21] Appellant's Brief of 11 Jun 2018 at 16 (citing NEW OXFORD ENGLISH DICTIONARY 237 (2d. Ed. 2005)); Appellee's Brief of 9 Oct 2018 at 15.

sis added). The Court found that while Congress *could have* used different language or specified a different causation test, they used language that directs "but-for" causality. *Id*. at 216.

In contrast, the government urges us to instead ascribe to the Court's later decision in which they noted that statutory language that "clearly imports some kind of causal or means-end relation" without specifying that relation "allows, indeed supports, our adoption of a demanding but still practicable causal standard." *Maslenjak v. United States,* __ U.S. __, 137 S. Ct. 1918, 1930 (2017). In *Maslenjak*, the statute automatically revoked the naturalized citizenship of one convicted of "knowingly procur[ing], contrary to law, the naturalization of any person." *Id*. at 1922-23. The Court rejected the government's assertion that *any* violation of the law in the course of procuring naturalization—whether or not completely unrelated to the process, such as having an undeclared weapon while filling out required naturalization paperwork in the government office in violation of statute—would subject the citizenship to revocation. *Id*. at 1925-26. Additionally, the Court also rejected Maslenjak's argument that the government should be required to provide "proof positive that a disqualifying fact would have been found" as doing so would exceed the likely intent of Congress. *Id*. at 1930.

Congress in Article 120, UCMJ, repeatedly used "by" without definition, but it has not specifically employed the previously determined "results from" or other cited language of *Burrage* necessitating "but-for" causality or the plainly open-ended language found in *Maslenjak*. We therefore look *in pari materia* to other sections of the same statute, the UCMJ, to ascertain legislative intent. *United States v. McPherson*, 73 M.J. 393, 395-96 (C.A.A.F. 2014).

The CAAF previously explored, and rejected, the argument that a strict "but-for" causation requirement should apply to fraudulent enlistment under Article 83, UCMJ. *United States v. Watson*, 71 M.J. 54 (C.A.A.F. 2012). In *Watson*, the appellant did not contest that he enlisted, received pay and benefits from doing so, and that he knowingly misrepresented material facts concerning his pre-service inpatient psychiatric treatment. The pivotal element of his offense was whether his enlistment "was obtained or procured *by* that knowingly false representation" when he answered "no" to an enlistment questionnaire asking whether he had ever been a patient for various mental health issues. *Id*. at 56-57 (emphasis added). He contended that, since a waiver of his mental health treatment was *possible*, it was impossible to state with certainty that his falsehood in answering the question would have disqualified him from service. *Id*. at 57. The CAAF rejected Watson's argument to apply a "but-for" causation requirement, relying upon the plain language of the statute and finding it "sufficient that the applicant knows 'that his answers to questions regarding his qualifications are untruthful by commission

or omission.'" *Id.* at 58 (quoting *United States v. Holbrook*, 66 M.J. 31, 33 (C.A.A.F. 2008)).

The appellant argues we should find *Watson* inapplicable to the present case as it was decided two years prior to *Burrage*. We decline to do so noting that, in the same term as it decided *Burrage*, the Court found it "unacceptable to adopt a causal standard so strict that it would undermine congressional intent where neither the plain text of the statute nor legal tradition demands such an approach." *Paroline v. United States*, 572 U.S. 434, 458 (2014). Additionally, the Court noted that a proximate cause, of which there may be more than one so long as each has "a sufficient connection to the result," applies equally in criminal and tort law to require "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 434, 444 (citations and internal quotation marks omitted). Even under a stricter standard, the bodily harm the appellant inflicted directly facilitated his ability to complete the sexual act. Were he not to pull down TS's underwear, the appellant would not have been able to penetrate her vulva with his tongue. Likewise, pressing his body against TS may not have been the *only* means by which the appellant could have penetrated TS's vulva with his penis, but doing so directly related to his ability to accomplish the sexual act. Therefore, a reasonable factfinder could have found all the essential elements of both specifications beyond a reasonable doubt. Accordingly, we find the appellant's convictions legally sufficient.

### 2. Factual sufficiency

The appellant testified in his own defense. On cross-examination, the trial counsel raised numerous text conversations that the appellant had with friends in September and October 2015 to describe his version of the events to his friends after they initially heard of the allegations of sexual assault against him.[22] One of the friends from this group embedded a copy of the text TS sent him about what the appellant had done. The group discussed this in these messages, without including TS in their exchanges, necessitating the appellant to provide more details with each response. After publication of these messages to the members, the trial counsel explored the discrepancies and additional details of the messages over the course of time and, more significantly, as they related to the appellant's testimony he had just provided at trial.

---

[22] The texts sent by the appellant to describe his version of events were contained in PE 10 of 30 September 2015, PE 31 and PE 32 of 5 October 2015, and PE 30 of 20 October 2015.

Asked to explain these critical discrepancies, the appellant continued to respond to trial counsel's questions that he "was in no right of mind to be texting [about] what happened that night. I was in a dark place. I couldn't—I shouldn't have been sending out texts."[23] The appellant's messages to his friends in which he was unable to credibly reconcile the many inconsistencies, as well as his rote diversionary response to the trial counsel's questions, dealt devastating blows to his case when the government's case was already strong.[24] His testimony in court did little to explain away the victim's testimony that she told him "no" and "stop," and his description of how he and TS were positioned during the sex act in his communications close in time with the events of 25-26 September 2015.

Having reviewed the entirety of the record and after weighing the evidence anew, making allowances for not having personally observed the witnesses, we too are convinced beyond reasonable doubt of the appellant's guilt.

---

[23] Record at 624. The appellant made similar responses that "in the month of October I was not in the right mind to be telling any story that happened that night." *Id.* at 627. "Again, I was not in the right mindset to be sending any text referencing that event." *Id.* at 641. "Honestly, I was not in the right headspace to be telling any story relating to that incident." *Id.* at 643. "I was not in the right headspace to be telling anyone what happened that night." *Id.* at 644. "I was not in the right headspace to be telling any type of story." *Id.* Nonetheless, the appellant admitted that during this same time he claimed to not be in the right state of mind he was going to work, going out to bars, trying to meet new girls, dating, hanging out with friends, and texting his friends. *Id.* at 650. Additionally, the government recalled the Naval Criminal Investigative Service Special Agent who conducted the Cellebrite extraction of data from the appellant's cellular phone. Of all the texts and images on the appellant's phone that were reproduced by the extraction, PE 26, the appellant's exchange of texts with MO, was not included in the extraction but was retrieved from the phone of MO. To the Special Agent, he believed it most likely that the appellant deleted this specific exchange from his phone. *Id.* at 743-44. From the government, the point to the members was obvious—the appellant claimed he was not of right mind to be sending texts to his friends with a plausible and consistent story, but during this same period, he conducted daily functions of his life *and* deleted a potentially damaging text exchange with MO.

[24] *Id.* at 643. An example of one of these exchanges: "A: The story I told is not correct—in the correct chronological order. It's not – Q: So you lied to your friends? A: In that text I didn't intentionally lie to my friends. I told them in—the wrong story." *Id.* at 643-44.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights. Arts. 59 and 66, UCMJ. Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court