# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39796 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Maxwell A. MATTHEW**
Staff Sergeant Class (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 21 July 2022

———————————

*Military Judge:* Shaun S. Speranza (arraignment);[1] Bryon T. Gleisner.

*Approved sentence:* Dishonorable discharge, confinement for 17 months, and reduction to E-1. Sentence adjudged on 20 June 2019 by GCM convened at Patrick Air Force Base, Florida.

*For Appellant:* Major Amanda E. Dermady, USAF; Robert Feldmeier, Esquire.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Alex B. Coberly, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and CADOTTE, *Appellate Military Judges.*

Judge CADOTTE delivered the opinion of the court, in which Chief Judge JOHNSON joined. Judge RICHARDSON filed a separate dissenting opinion.

———————————

[1] Judge Speranza is identified as the detailed military judge for Appellant's arraignment in a memorandum dated 22 January 2019. We explain the significance of this memorandum later in this opinion.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

CADOTTE, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of one specification of wrongful possession of child pornography on divers occasions in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934; and one specification of attempt to distribute child pornography on divers occasions in violation of Article 80, UCMJ, 10 U.S.C. § 880.[2,3] The military judge sentenced Appellant to a dishonorable discharge, confinement for 17 months, and reduction to the grade of E-1.[4]

Appellant's case is before us for the second time. Appellant raised two assignments of error, one of which asserts the record of trial is incomplete. During our initial review of this case, we determined that the transcript for Appellant's arraignment was missing from the record of trial. As a result, pursuant to Rule for Courts-Martial (R.C.M.) 1104(d)(1), we returned the record of trial to the convening authority with direction to return it to the military judge who presided at Appellant's court-martial and was present at the end of the proceedings, for action consistent with R.C.M. 1104(d*). See United States v. Matthew*, No. ACM 39796, 2020 CCA LEXIS 486, at *2 (A.F. Ct. Crim. App. 23 Dec.

---

[2] All references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2012 ed.). Unless otherwise noted, all other references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant was charged with one specification of wrongful distribution of child pornography in violation of Article 134, UCMJ, but entered a plea of guilty to the lesser included offense of attempt to distribute child pornography in violation of Article 80, UCMJ. After the Government informed the military judge of its intent to not go forward with proof on the greater offense, the military judge found Appellant not guilty of the wrongful distribution of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934, but guilty in accordance with his plea.

[4] The convening authority deferred all mandatory forfeitures and reduction in grade from 14 days after the sentence was adjudged until date of action, pursuant to Article 57, UCMJ, 10 U.S.C. § 857. The convening authority also waived mandatory forfeitures for a period of six months, or release from confinement or expiration of term of service, whichever is sooner, from 14 days after sentence was adjudged to be paid to Appellant's spouse for the benefit of his children, pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b.

2020) (order). That judge was to determine whether the judge who presided over Appellant's arraignment could authenticate the arraignment transcript or whether a substitute authentication may be completed under R.C.M. 1104(a)(2)(B). *Id.* at *3–4. On 4 March 2021, the Government returned the record of trial without correction, stating, "An authenticated transcript of Appellant's arraignment cannot be obtained because the audio recording of the hearing has been lost and no alternatives can be located." The case was then redocketed with this court.

We now turn to Appellant's assignments of error: (1) whether Appellant's plea to attempted distribution of child pornography was not provident because Appellant did not disclose specific intent; and (2) whether the record of trial is incomplete. We do not reach a decision on the first issue as a result of our resolution of the second. We find the record of trial is not verbatim. Consequently, we set aside the findings and sentence and return the case to The Judge Advocate General for return to an appropriate convening authority for action consistent with R.C.M. 1103(f).

# I. BACKGROUND

At his court-martial, Appellant pleaded guilty to possessing and attempting to distribute child pornography on divers occasions between on or about 30 August 2015 and 19 October 2017 while stationed at Barksdale AFB, Louisiana, and Patrick AFB. On 22 January 2019, Judge Speranza, the Chief Circuit Military Judge for the Eastern Circuit, issued a memorandum with the subject of "Confirmation of 'Arraignment and Initial Trial Dates.'" In the memorandum, Judge Speranza detailed himself to the arraignment set to take place on 25 January 2019, and detailed Judge Gleisner to preside over the trial. This is the only document in the record that refers to Judge Speranza.

The ROT does not include a session on 25 January 2019 containing Appellant's arraignment. Appellate Exhibit I, a scheduling order containing a summary of an R.C.M. 802 scheduling conference on 25 January 2019, indicates the parties and Judge Gleisner discussed, *inter alia*, "Arraignment. (25 Jan 19)," "Expected Motions. (IAW scheduling order)," and "Expected Pleas and Forum. (TBD)." At trial on 19 June 2019, Judge Gleisner engaged in the following colloquy with Appellant regarding Appellant's arraignment:

> MJ: You were previously arraigned on 25 January 2019. Do you recall that [Appellant]?
>
> [Appellant]: Yes, Your Honor[.]
>
> MJ: And at that time your rights to counsel were explained to you. Would you like me to re-advise you of your rights to counsel?

[Appellant]: No, Your Honor.

MJ: Do you have any questions about your rights to counsel?

[Appellant]: No, Your Honor.

MJ: And by whom do you wish to be represented?

[Appellant]: Major [K], Mr. [S] and Mr. [G].

MJ: And by them alone?

[Appellant]: Yes, Your Honor.

. . . .

MJ: And [Appellant], I'm going to go ahead and talk to you a little bit about your forum rights. Your forum rights were explained to you during the 25 January 2019 arraignment. Would you like me to re-advise you of your forum rights?

[Appellant]: No, Your Honor.

MJ: Excuse me?

[Appellant]: No, Your Honor.

MJ: Thank you.

So, do you understand the choices that you had with your regards to forum?

[Appellant]: Yes, Your Honor.

MJ: And by which type of court do you wish to be tried?

[Appellant]: By judge alone, Your Honor.

In its response to Appellant's assignments of error, the Government requested that if this court is inclined to find prejudicial error, we should return the record "to the convening authority for appropriate action under R.C.M. 1104(d)." On 23 December 2020, this court ordered the ROT be "returned to the convening authority, who will return it to the military judge who presided at Appellant's court-martial and was present at the end of the proceedings, for action consistent with R.C.M. 1104(d)." It was further ordered that "[i]f authentication of the arraignment transcript cannot be obtained, the ROT will be returned to our court with an explanation from the Government as to why it cannot comply with this order."

On 14 January 2021, in compliance with this court's order, the Government provided notice stating, "An authenticated transcript of Appellant's arraignment cannot be obtained because the audio recording of the hearing has been

lost and no alternatives can be located." We now address the issue of the missing arraignment transcript.

During Appellant's court-martial Judge Gleisner never addressed or acknowledged that the audio recording of the 25 January 2019 hearing was lost. It does not appear that Judge Gleisner was aware that the audio recording was lost, and he did not attempt to take any corrective actions.

## II. DISCUSSION

Appellant asserts that the record of trial (ROT) is incomplete because it "contains omissions of the transcript of at least one [Article 39(a), UCMJ, 10 U.S.C. § 839(a),] session, containing Appellant's arraignment." Appellant further argues that "if the [ROT] cannot be made accurate, the only appropriate remedy is for this [c]ourt to affirm only a nonverbatim record sentence and disapprove Appellant's punitive discharge and adjudge only six months confinement." In support of his argument Appellant cites the version of R.C.M. 1114(a) found in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).[5] During our initial review of this case, we determined that the transcript for Appellant's arraignment was missing from the ROT. We ordered the ROT returned to the convening authority for correction; however none was made. As the record has not been corrected, we find the record to be substantially nonverbatim.

We agree with Appellant that the ROT is incomplete and that it constitutes a nonverbatim record. However, we disagree with Appellant as to the appropriate remedy. Instead, we set aside the findings and sentence and return the case to The Judge Advocate General for return to an appropriate convening authority for action consistent with R.C.M. 1103(f) as stated in the decretal paragraph.

### A. Law

Whether a transcript is verbatim, and a trial record complete, are questions of law we review de novo. *United States v. Davenport*, 73 M.J. 373, 376 (C.A.A.F. 2014) (citation omitted). "The requirement that a record of trial be

---

[5] Appellant's reference to the version of R.C.M. 1114(a) in the 2019 *MCM* is inapposite because the charge was referred to general court-martial on 20 December 2018. *See* Executive Order 13825, § 3(d) (8 Mar. 2018):

> Except as otherwise provided in this order, the [Military Justice Act of 2016] shall not apply in any case in which charges are referred to trial by court-martial before January 1, 2019. Except as otherwise provided in this order, proceedings in any such case shall be held in the same manner and with the same effect as if the MJA had not been enacted.

complete and substantially verbatim in order to uphold the validity of a verbatim record sentence is one of jurisdictional proportion that cannot be waived." *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000) (citation omitted).

A complete record of the proceedings and testimony shall be prepared in each general court-martial where the adjudged sentence includes, *inter alia*, a discharge or, if the adjudged sentence does not include a discharge, any other sentence which exceeds that which may be adjudged at a special court-martial. Article 54, UCMJ, 10 U.S.C. § 854. "[T]he record of trial shall include a verbatim transcript of all sessions except sessions closed for deliberations and voting when: [ ] the sentence adjudged includes confinement for twelve months or more or any punishment that may not be adjudged by a special court-martial; or [ ] [a] bad-conduct has been adjudged." R.C.M. 1103(b)(2)(B); *see United States v. Gaskins,* 72 M.J. 225, 230 (C.A.A.F. 2013).

R.C.M. 1103(f), *Loss of notes or recordings of proceedings*, states:

> If, because of loss of recordings or notes, or other reasons, a verbatim transcript cannot be prepared when required by subsection (b)(2)(B) or (c)(1) of this rule, a record which meets the requirements of subsection (b)(2)(C) of this rule shall be prepared, and the convening authority may:

> (1) Approve only so much of the sentence that could be adjudged by a special court-martial, except that a bad-conduct discharge, confinement for more than six months, or forfeiture of two-thirds pay per month for more than six months, may not be approved; or

> (2) Direct a rehearing as to any offense of which the accused was found guilty if the finding is supported by the summary of the evidence contained in the record, provided that the convening authority may not approve any sentence imposed at such a rehearing more severe than or in excess of that adjudged by the earlier court-martial.

R.C.M. 1104(d)(2), *Procedure*, states:

> An authenticated record of trial believed to be incomplete or defective may be returned to the military judge or summary court-martial for a certificate of correction. The military judge or summary court-martial shall give notice of the proposed correction to all parties and permit them to examine and respond to the proposed correction before authenticating the certificate of correction. All parties shall be given reasonable access to any original reporter's notes or tapes of the proceedings.

R.C.M. 904 states in its entirety that an "[a]rraignment *shall* be conducted in a court-martial session and *shall* consist of reading the charges and specifications to the accused and calling on the accused to plead. The accused may waive the reading." (Emphasis added).

Whether an omission from a record of trial is substantial is a question of law we review de novo. *United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000). "Verbatim" for the purposes of a court-martial transcript does not mean word for word, but that the transcript be substantially verbatim. *Davenport*, 73 M.J. at 377 (quoting *United States v. Lashley*, 14 M.J. 7, 8 (C.M.A. 1982)). "[T]he threshold question is whether the omitted material was substantial, either qualitatively or quantitatively." *Id.* (internal quotation marks omitted) (quoting *Lashley*, 14 M.J. at 9). "Omissions are quantitatively substantial unless 'the totality of omissions . . . becomes so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness.'" *Id.* (alteration in original) (quoting *United States v. Nelson*, 3 C.M.A. 482, 13 C.M.R. 38, 43 (C.M.A. 1953)). We must approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams,* 50 M.J. 361, 363 (C.A.A.F. 1999) (citation omitted).

Nonverbatim transcript errors are not tested for prejudice:

> if there is not a verbatim transcript, there is also no "complete record." R.C.M. 1103(b)(2)(D). However, while in the case of most incomplete records prophylactic measures are not prescribed, and the missing material or remedy for same are tested for prejudice, where the record is incomplete because the transcript is not verbatim, the procedures set forth in R.C.M. 1103(f) control.

*Davenport*, 73 M.J. at 377 (citation omitted).

"If a military judge fails to cure a substantial omission and a nonverbatim transcript results, R.C.M. 1103(f)[ ] is triggered and the remedy lies within the sole discretion of the convening authority." *United States v. Tate*, __ M.J. __, No. 21-0235, 2022 CAAF LEXIS 381, at *21 (C.A.A.F. 23 May 2022).

**B. Analysis**

The military judge's sentence which includes a dishonorable discharge and confinement for 17 months requires that the transcript be verbatim. R.C.M. 1103(b)(2)(B). In order for the transcript to be verbatim, it must include "all proceedings including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge." R.C.M. 1103(b), Discussion; *see also Tate*, 2022 CAAF LEXIS 381, at *8. After our initial review, we granted the Government's requested relief and returned the record for correction. The record was returned to us with the Government's explanation the record could not

be corrected for the reason stated above. As a result, the transcript before us does not include the initial Article 39(a), UCMJ, session, arraigning the Appellant on 25 January 2019. While the record contains references to this initial Article 39(a) session, this initial session is missing from the record. The record before us does not include Appellant being advised of his right to counsel or forum rights, R.C.M. 903(a), as he declined to be re-advised of those rights by Judge Gleisner.

Considering the threshold question—whether the omitted material was qualitatively or quantitatively substantial—we find the omission resulting from the lost audio recording to be quantitatively substantial. *See Tate*, 2022 CAAF LEXIS 381, at *8–9 (citations omitted). The omission is not "so unimportant and so uninfluential when viewed in the light of the whole record, that it approaches nothingness." *Davenport*, 73 M.J. at 377 (quoting *Nelson*, 3 C.M.A. at 486). The omitted matter includes the arraignment, which is a significant event in the progress of a court-martial with certain requirements. *See* R.C.M. 707(b)(1); R.C.M. 904; *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F. 1999). In addition, we are unable to review the sufficiency of Appellant's advisement of his rights to counsel and forum selection, as well as any other matters that might have arisen in the 25 January 2019 Article 39(a) session.

The Government argues that even if it is assumed that the transcript in this case is not substantially verbatim, then the Government may rebut a presumption of prejudice. The Government's answer contends there is an "absence of any presumed or actual prejudice" to Appellant. As we have determined the record is incomplete because the transcript is not verbatim, contrary to the Government's argument, we do not test for prejudice, and "the procedures set forth in R.C.M. 1103(f) control." *Davenport*, 73 M.J. at 377 (citation omitted).

Our esteemed dissenting colleague contends that "had the trial judge in Appellant's case known that the initial Article 39(a) session would not be transcribed, his reference to that session and his repetition of what commonly transpires at such a session could be considered a combination of two remedial actions: reconstruction and 'starting anew.'" We do not find the trial judge took any action which qualifies as remedial action, let alone, a combination of remedial actions.

Unlike our colleague, we do not find the missing Article 39(a) session was reconstructed when Appellant agreed with Judge Gleisner that he had been arraigned. *See Tate*, 2022 CAAF LEXIS 381, at *12. Appellant's acknowledgement of his arraignment falls significantly short of a reconstruction of the record. Appellant's responses fail to contain the level of detail necessary to reconstruct the record as we are left with significant questions as to the parties present, and the duration and content of the missing Article 39(a) session. It is not

surprising that Judge Gleisner's questioning of Appellant lacks sufficient detail to reconstruct the record as he was unaware that anything was amiss with the record.

Likewise, if we assume "starting anew" was an available remedy, we do not find, as our colleague does, Judge Gleisner "started anew." *See Id.* at *13–14. Contrary to any apparent intent to "start anew," Judge Gleisner relied upon advisements to Appellant which occurred in a previous Article 39(a) session and he did not fully re-advise Appellant of his various rights. We also find it significant that Judge Gleisner did not express he was disregarding the initial Article 39(a) session and starting the trial over from the beginning. In order to "start anew," a military judge must, at a minimum, announce he is calling the judicial equivalent of a mulligan. *See id.* Judge Gleisner never expressed he was taking remedial action in the form of reconstruction or "starting anew" to account for the lost recording. Unlike our colleague, we do not find the record supports recasting what took place at trial as remedial action.

When faced with the loss of a recording which prevents the preparation of a verbatim transcript, under the state of the law reflected in the 2016 *Manual for Courts-Martial* and applicable in this case, a convening authority enters into a catch-22 scenario. The Court of Appeals for the Armed Forces (CAAF) recently addressed this conundrum in *Tate*. 2022 CAAF LEXIS 381, at *21–23. After finding a nonverbatim transcript, resulting from the failure of the court's recording device during the appellant's sentencing hearing, was not properly remedied, the CAAF stated:

> Despite the discretionary language of R.C.M. 1103(f) (2016 ed.), Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(4)(A) (2012 & Supp. IV 2013-2017) presents a procedural limitation. Article 60(c)(4)(A), UCMJ, states, "the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge." As a result, we set aside Appellant's sentence and remand to [T]he Judge Advocate General of the Army for return to an appropriate convening authority for action consistent with R.C.M. 1103(f) (2016 ed.).

*Id.* at *22–23; *see also United States v. Steele*, ARMY 20170303, 2019 CCA LEXIS 95 (A. Ct. Crim. App. 5 Mar. 2019) (unpub. op.) (setting aside the sentence and returning the record for action consistent with R.C.M. 1103(f) due to substantial omission from the verbatim record during sentencing proceedings).

The nonverbatim transcripts in *Tate* and *Steele* were limited to the sentencing phase of the trial. However, when faced with a nonverbatim record resulting from an omission that affected findings, in addition to sentencing, our sister court set aside all of the findings of guilty and the sentence before returning the case to the convening authority for action consistent with R.C.M. 1103(f)(2). *United States v. Bruner*, ARMY 20190276, 2020 CCA LEXIS 267, *8–9 (A. Ct. Crim. App. 12 Aug. 2020) (unpub. op.), *rev. denied*, ___ M.J. ___, No. 22-0053, 2022 CAAF LEXIS 308 (C.A.A.F. 26 Apr. 2022). We are similarly faced with an omission which is not limited to the sentencing proceedings. Considering the circumstances in this case, we find the appropriate remedy is to set aside the findings and sentence and return to the case to The Judge Advocate General for return to an appropriate convening authority for action consistent with R.C.M. 1103(f).

### III. CONCLUSION

The findings and sentence are **SET ASIDE**. The record of trial is returned to The Judge Advocate General for return to an appropriate convening authority for action consistent with R.C.M. 1103(f).

RICHARDSON, Judge (dissenting):

I disagree with my esteemed colleagues in the majority that the transcript in this case is not substantially verbatim. I would find the military judge effectively remedied the omission. Therefore, I respectfully dissent.

### I. DISCUSSION

**A. Substantial Omission**

**1. Law**

"In assessing either whether a record is complete or whether a transcript is verbatim, the threshold question is 'whether the omitted material was substantial, either qualitatively or quantitatively.'" *United States v. Davenport*, 73 M.J. 373, 377 (C.A.A.F. 2014) (citation omitted) (quoting *United States v. Lashley*, 14 M.J. 7, 9 (C.M.A. 1982)).

When the record is incomplete due to a nonverbatim record, we do not test for prejudice; "the procedures in R.C.M. 1103(f) control." *Id.* (citing *United States v. Gaskins*, 72 M.J. 225, 230–31 (C.A.A.F. 2013)).[1]

### 2. Background and Analysis

We do not know with certainty whether the initial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session of Appellant's court-martial was ever recorded. We know from reviewing the record that this session was not transcribed and made part of the record of trial, and the Government has failed to cure this deficiency.[2] Without the transcript of the initial Article 39(a) session we do not know: who besides Appellant and a military judge was present; who Appellant wanted to represent him at the arraignment; and whether any parties were qualified, certified, and sworn. Those are important facts to state for the record, but they are insubstantial in this context. I conclude that the omission of a transcript of the initial Article 39(a) session was not substantial and was remedied by the trial judge.

The record indicates that on 25 January 2019, at the initial Article 39(a) session: (1) Appellant was advised of his rights to counsel; (2) Appellant was advised of his forum rights; (3) Appellant deferred entry of pleas; (4) Appellant deferred entry of forum; (5) no exhibits were admitted;[3] and (6) Appellant was arraigned. The same day as the arraignment, the trial judge held a conference with counsel to discuss expected issues in the case, and summarized this conference in Appellate Exhibit I, his scheduling order. In this order, the trial judge set due dates for motions and other milestones. Neither at this conference nor at trial did Appellant or the Government refer to anything else of

---

[1] Rule for Courts-Martial (R.C.M.) 1103(f) placed limits on the scope of a sentence the convening authority could approve in a case with a non-verbatim transcript. *See Manual for Courts-Martial, United States* (2016 ed.). R.C.M. 1103 was revised and renumbered R.C.M. 1112; those changes apply to cases with offenses referred *after* 1 January 2019, so do not apply to Appellant's case. *See* Executive Order 13,825, § 5, 83 Fed. Reg. 9889 (8 Mar. 2018). Notably, the limitations in R.C.M. 1103(f) are no longer present. *See Manual for Courts-Martial, United States* (2019 ed.).

[2] I come to this conclusion even though the record of trial includes documents indicating that on 20 September 2019, the assistant trial counsel certified that he reviewed the transcript in this case and "determine[d] it to be accurate and complete;" and on 27 September 2019, the trial judge "authenticate[d] the Record of Trial in accordance with [R.C.M.] 1104."

[3] All appellate, prosecution, and defense exhibits in the record of trial were marked, offered, or admitted during the court-martial beginning in June 2019, and those exhibits are identified consecutively beginning with "I," "1," and "A," respectively.

substance occurring at this initial Article 39(a) session. The charge sheet in this case was not amended in any way.

During the initial *trial* Article 39(a) session, the Government announced the convening orders—and asserted they would be inserted at that point in the record; that the charges were properly referred to the court for trial and were served on Appellant on 16 January 2019; the five-day statutory waiting period had expired; who was present; who detailed trial counsel and assistant trial counsel; whether trial counsel and assistant trial counsel were qualified, certified, and sworn; and that no member of the Prosecution had acted in any manner which might tend to disqualify them in the court-martial. The military defense counsel announced by whom he was detailed; that he was qualified, certified, and sworn; and that he had not acted in any manner which might tend to disqualify him in Appellant's court-martial. One of the civilian defense counsel announced that he and Appellant's other civilian defense counsel were members in good standing with their state bars and neither acted in any manner which may tend to disqualify them. The military judge swore in the assistant trial counsel and both civilian defense counsel. The military judge asserted he was not aware of any grounds for challenge against him, and allowed the trial counsel to question him about the nature of his relationship with the civilian defense counsel. The military judge announced that "[c]ounsel on both sides appear to have the requisite qualifications and all personnel required to be sworn have been sworn."

Immediately afterwards, the military judge ascertained from Appellant that he did not want to be re-advised of his rights to forum, and that he understood his choices regarding forum. Appellant elected to be tried by military judge. Before approving Appellant's request, the military judge ascertained that Appellant's choice was voluntary, and that he understood he was giving up the right to be tried by a court composed of members. The military judge then called on Appellant for pleas, and Appellant's counsel entered his pleas of guilty, including to a lesser-included offense.

In my view, the trial judge remedied the omission in the transcript by conducting an Article 39(a) session that covered most of what normally occurs at an arraignment session, and the parties proceeded as if there were no errors with Appellant's arraignment. Defects in the arraignment may be waived.[4] In *United States v. Lichtsinn*, 32 M.J. 898, 899 (A.F.C.M.R. 1991), the military judge called upon the accused for pleas, but did not direct the reading of the

---

[4] *See Garland v. Washington*, 232 U.S. 642, 646–47 (1914) (holding errors in arraignment may be waived and do not warrant reversal when other due process requirements are met, and opining a contrary holding would be an unnecessary "technical enforcement of formal rights").

charges as required by R.C.M. 904. "The parties clearly proceeded as if there had been an arraignment, a formal plea was entered, and there was no objection to the defective process at trial." *Id.* In this case, Appellant was arraigned on 25 January 2019. On 19 June 2019, at the initial trial Article 39(a) session, the military judge called on Appellant for pleas, as is done during an arraignment. While the trial judge did not ensure the charges were read, or obtain Appellant's waiver, such "error in the arraignment process" may be waived. *Id.* In the present case, even if the arraignment was deficient, Appellant waived the errors at trial and proceeded "as if there had been an arraignment." *Id.* That the transcript of Appellant's initial arraignment is not in the record of trial is insubstantial.

While we cannot know how long the initial Article 39(a) session was, we know the duration of the initial trial Article 39(a) session. The beginning of the trial to when pleas were entered comprise 10 pages of the 171-page transcript—this includes marking appellate exhibits. I have no reason to believe the un-transcribed Article 39(a) session was significantly longer. What we would expect to happen at an initial Article 39(a) session happened at trial, and what did not happen at trial, Appellant waived any error therefrom.

## B. Remedy

### 1. Law

In *United States v. Tate*, the CAAF considered whether the transcript of the appellant's trial was verbatim when the "court's recording device had failed to capture the previous day's sentencing proceedings" and the military judge purported to start the sentencing proceedings "anew." __ M.J. __, No. 21-0235, 2022 CAAF LEXIS 381, at *3–4 (C.A.A.F. 23 May 2022). The CAAF employed a two-part analysis: "First, . . . decide whether the transcript was substantially verbatim" and "if it is not, . . . decide whether the military judge's remedy upon discovering the recording malfunction was proper and sufficient such that it resulted in a substantially verbatim transcript." *Id.* at *7. "In the absence of any guidance from the Rules, military courts have long authorized three potential solutions when court recording devices fail: (1) declaring a mistrial; (2) reconstructing the record of trial; and (3) starting anew." *Id.* at *2. In *Tate*, the CAAF found the military judge did not actually start anew; he announced he would not consider aggravation testimony that was not presented in the unrecorded portion, but did not state what that testimony was.

### 2. Background and Analysis

Had the trial judge in Appellant's case known that the initial Article 39(a) session would not be transcribed, his reference to that session and his repetition of what commonly transpires at such a session could be considered a combination of two remedial actions: reconstruction and "starting anew." The bulk

of the initial trial Article 39(a) session—as described in great detail above—was starting anew. The reconstruction was when Appellant agreed with the trial judge that Appellant had been arraigned, had been notified of his rights to counsel, and had been notified of his forum choices. In Appellant's case, the initial Article 39(a) session was of no consequence. Arraignment has legal effects, but those were not, and are not, at issue in this case.

But because a session of low significance *in this case* was not transcribed, the majority reads the law to require this court conclude the transcript is not substantially verbatim, and return the case to the convening authority and authorize a rehearing on findings and sentence. I am not convinced *Davenport* and *Tate* require this result. No rulings, argument, testimony, evidence, or anything else material to Appellant's case is missing from this record of trial. Appellant pleaded guilty and satisfied the military judge that he was in fact guilty of the offenses to which he pleaded guilty. If the initial Article 39(a) session had not happened, and Appellant's trial progressed as if it had, I am confident we would find the record was complete and there was no prejudicial error to Appellant's substantial rights. In this case, the trial judge's actions were remedial in effect and "sufficient such that it resulted in a substantially verbatim transcript." *See Tate*, 2022 CAAF LEXIS 381, at \*7. Therefore, I respectfully dissent.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court